**RECIPROCAL EXCHANGE,**
Plaintiff-Appellee,

v.

**Iver NOLAND et al.,**
**Defendants-Appellants.**

No. 75–1811.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1976.
Decided Sept. 24, 1976.

Nathan Gordon, Morrilton, Ark., argued and filed briefs for defendants-appellants.

Overton S. Anderson, Little Rock, Ark., argued and filed briefs for plaintiff-appellee.

Before GIBSON, Chief Judge, and LAY and WEBSTER, Circuit Judges.

GIBSON, Chief Judge.

In this diversity case plaintiff-appellee, Reciprocal Exchange (Reciprocal), filed a declaratory judgment action seeking a judicial construction of its coverage on a liability policy issued by it to defendant-appellant, James H. Patterson, the named insured. The other defendants-appellants have a claim for the wrongful death of their son now pending against Patterson.

In July, 1973, Patterson purchased a 1967 Camaro that had an inoperable engine. At that time he already owned a 1968 Camaro which was the designated automobile in the liability insurance policy issued by Reciprocal. This policy was renewed on its renewal date of August 12, 1973. During the course of that renewal year Patterson made sporadic attempts to repair the 1967 Camaro and had driven it a few miles in that endeavor while continuing to drive the insured 1968 Camaro. In January, 1974, an operable engine was installed in the 1967 Camaro. Patterson then removed the battery from the 1968 Camaro and placed it in the 1967 Camaro. Patterson testified that he was attempting to sell his 1968 Camaro and, therefore, refrained from driving it. While driving the 1967 Camaro on January 12, 1974, he sustained an accident which resulted in the death of his passenger, Randall L. Noland. The administrators of Noland's estate filed suit on April 3, 1974, against Patterson in Arkansas state court to recover damages for the wrongful death of Randall L. Noland.

The District Court in Reciprocal's declaratory judgment action entered an order under the Federal Magistrates Act, 28 U.S.C. § 636 (1970), *as amended* (Supp. IV 1974), referring the suit, with the consent of the parties, to the United States magistrate. The District Court's reference provided that the magistrate's disposition of the suit would be a final judgment, appealable directly to the United States Court of Appeals for the Eighth Circuit.

After a pretrial conference and the submission of depositions, the magistrate granted Reciprocal's motion for summary judgment. Defendants appealed the magistrate's judgment directly to this court. We questioned the jurisdictional validity of such an appeal, however, and in an order entered April 12, 1976, we remanded to the District Court, with the direction that it treat the magistrate's judgment and supporting papers as a recommendation. The District Court, upon remand, adopted the magistrate's findings and entered summary judgment in favor of Reciprocal. A timely appeal followed.

Since this order retains in the district judge the fundamental adjudicatory role, the reference of the present case for "recommended" disposition did not contravene the requirement of Article III of the Constitution that the judicial power of the United States be vested in federal judges. The second reference was by consent and was for a recommended disposition only, reserving to the district court the authority to review the magisterial recommendation and enter such judgment as the district court found proper under the circumstances. The second reference was in accord with our order and with paragraph 11 of the local court rules. Appellants have not challenged the second reference and the subsequent procedure.[1]

---

1. Chief Justice Burger, speaking for a unanimous court (Justice Stevens not sitting) in *Matthews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), took cognizance of the many new statutes and regulations that had created an avalanche of work for the district courts and of the intention of Congress to permit referrals not inconsistent with the Constitution or statutory law, with the proviso "that authority for making final decisions remains at

The insurance policy in question here provides coverage for injury or death arising out of the use of "the owned automobile or any non-owned automobile" as those terms are defined in the policy. Insofar as it is relevant to this case, the policy includes the following definitions:

Owned automobile means

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

(b) a trailer owned by the named insured,

(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided

(1) it replaces an owned automobile as defined in (a) above, or

(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or

(d) a temporary substitute automobile;

"temporary substitute automobile" means any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

As a result of the additional step in the disposition of this case created by its reference to the magistrate, there is a dispute as to the issues that have been preserved on appeal. Appellants presented only one issue to the magistrate, expressly stating that they would rely on that issue alone, which asserted an ambiguity in the definition of a "temporary substitute automobile" as included under the "owned automobile" category of the policy. The brief before the magistrate waived most of the contentions now asserted, stating particularly that "we do not contend that Subsections (a) (b) and (c) of the definitions under 'owned automobile' apply", thus negating any claim that the automobile was a replacement or newly acquired automobile. Further assurances were made by counsel that no contention would be made that the 1967 Camaro was not an automobile, as that term is used in the policy, until it became operative.

The magistrate's subsequent recommendation that summary judgment be granted in favor of defendants was, accordingly, based upon his analysis of appellants' single contention. Appellants now state, however, that they presented additional issues to the trial court when it considered the magistrate's recommendation. This suggestion is unsupported by the record before this court. Moreover, the basic purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court, which would then be aided by the magistrate's recommendation to only a small degree. Because of the unique procedural history of

all times with the district judge" and then made this significant holding:

We need not define the full reach of a magistrate's authority under the Act, or reach the broad provisions of General Order No. 104–D, in order to decide this case. Under the part of the order at issue the magistrates perform a limited function which falls well within the range of duties Congress empowered the district courts to assign to them. * * * The magistrate gives only a recommendation to the judge, and only on the single, narrow issue: is there in the record substantial evidence to support the Secretary's decision? The magistrate may do no more than propose a recommendation, and neither § 636(b) nor the General Order gives such recommendation presumptive weight. The district judge is free to follow it or wholly ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew. The authority—and the responsibility—to make an informed final determination, we emphasize, remains with the judge. (Footnotes omitted.)

423 U.S. at 270, 96 S.Ct. at 554.

this case, however, we deem it appropriate to treat all contentions raised here by appellants as though they had been before the trial court.

Appellants first contend that the 1967 Camaro was covered at the time of the accident because it was a replacement or newly acquired automobile as those terms are defined by subsection (c). Clearly, the 1967 Camaro was not a replacement automobile, because Patterson still owned and operated the 1968 automobile designated for coverage under the policy. Moreover, the automatic coverage clause for newly acquired automobiles which appellants attempt to invoke extends for only 30 days after new acquisition. Patterson acquired the 1967 Camaro by purchase in July, 1973, at which time he immediately obtained a certificate of title and license plates for it. Thus, acquisition, which was not followed by notice to Reciprocal, occurred at least six months prior to the accident and not in January, 1974, when the 1967 Camaro was finally rendered operable. *Allstate Ins. Co. v. Stevens,* 445 F.2d 845, 847 (9th Cir. 1971). Accordingly, the 1967 Camaro was neither a replacement nor newly acquired automobile under subsection (c) of the policy.

Appellants next contend that the 1967 Camaro was a "temporary substitute automobile" under subsection (d) because the 1968 Camaro had been withdrawn from normal use. Appellants consider the nature of the withdrawal from use of the 1968 Camaro as determinative of whether the 1967 Camaro was a "temporary substitute automobile". This approach ignores the fact that the policy clearly states that a "temporary substitute automobile" must be one that is "not owned" by the named insured. Therefore, whether the 1968 Camaro had been withdrawn from use pursuant to the terms of the policy or not, the fact that Patterson owned the 1967 Camaro disqualified it from coverage as a "temporary substitute automobile" under subsection (d).

Appellants' final contention on appeal also involves the "temporary substitute automobile" portion of the policy. They argue that the 1967 Camaro was an "owned automobile" because it falls under subsection (d) set forth above, as "a temporary substitute automobile", regardless of the limiting definition of that phrase set forth in subsection (d).

Defendants do not, in this aspect of their argument, contend that the 1967 Camaro was a "temporary substitute automobile" as that term is defined in the policy, since it was clearly owned by the insured. However, they do argue that the interplay between subsection (d) and the definition of "temporary substitute automobile" creates an ambiguity which must be resolved by either ignoring the definition when applying subsection (d) or by determining that despite the definition, Reciprocal intended to provide insurance coverage for a temporary substitute automobile owned by the insured. In support of their contentions defendants cite *Safeco Ins. Co. of America v. Banks,* 275 Ala. 119, 152 So.2d 666 (1963), and *Silverstein v. Liberty Mut. Ins. Co.,* 505 F.2d 158 (5th Cir. 1974).[2] *Safeco* provides little support for defendants' position. The language in that policy was contradictory, first mentioning that a "temporary substitute automobile" must be owned by the named insured and then stating "temporary substitute automobile" means any automobile "not owned by the named insured".

The language of the policy involved in *Silverstein* is closer to that at issue here and is supportive of appellants' contention that the 1967 Camaro is a "temporary substitute" or a "newly acquired" vehicle. *Silverstein,* however, is factually inapposite to the present case. The insured in *Silverstein* had only one operable vehicle at any given time, thus avoiding the risk of liability for more than one car and the possibility of abuse of extending multiple coverage for a single premium. The named insured here had, at the time of the accident, two cars in operable condition under a policy providing coverage for only one vehicle. The mere fact that the insured shifted the battery from one car to the other did not render the

---

2. There is no Arkansas decisional authority on point.

car inoperable, as was the totally inoperative car in *Silverstein*. Furthermore, *Silverstein* only interprets Florida law, which is not binding precedent on a United States district court in Arkansas.

Appellants have cited no binding case law supportive of their contention that the 1967 Camaro was an "owned automobile" under subsection (d) of plaintiff's policy. Moreover, they have failed to establish that the provisions in question are in fact ambiguous or that subsection (d) may be applied without reference to the definition of "temporary substitute automobile" immediately following it. To fall under subsection (d), an automobile must be one that is "not owned by the named insured". This definition is straightforward and unambiguous. In fact it contemplates the use of a borrowed car or loaner vehicle when the designated automobile owned by the insured is temporarily out of service. Automobiles owned by the insured must be listed in the policy and premiums paid thereon unless the vehicle falls within other coverage clauses as a newly acquired or replacement automobile, either of which must be acquired by the named insured during the policy period.

The 1967 Camaro involved in the accident here cannot be classified as an "owned automobile" under subsection (d) of the policy, nor does it qualify as a replacement, newly acquired or "temporary substitute automobile", as those terms are used in the policy. The policy is unambiguous, using common terms and defining special terms without unnecessary verboseness or confusion. This is a regrettable situation, since insurance was obtained for one of Patterson's automobiles, but the policy simply cannot be stretched to supply multiple coverage in this factual context.

The judgment of the District Court is affirmed.