William COOLIDGE, Plaintiff–Appellant,

v.

The SCHOONER CALIFORNIA, Barts Wharf, Portland, Oregon, Defendant–Appellee.

YOUTH ADVENTURE, INC., and Vessel Zodiac, Inc., Plaintiffs–Appellees,

v.

The OIL SCREW CALIFORNIA, her engines, tackle, apparel and equipment, in rem, and William Coolidge, Karen Coolidge, John Doe, Jim Doe, Peter Doe, Helen Doe, George Doe and Jane Doe, Defendants–Appellants.

No. 79–4007.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1980.

Decided Jan. 30, 1981.

Mark ·L. Tuft, Cooper, White & Cooper, San Francisco, Cal., argued, for plaintiff–appellant.

John R. Brooke, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for defendant–appellee.

Before VAN DUSEN,* KILKENNY and HUG, Circuit Judges.

* The Honorable Francis L. Van Dusen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

KILKENNY, Circuit Judge:

Appellant appeals from an adverse judgment in a consolidated admiralty action involving the rights and obligations of the parties with respect to THE SCHOONER CALIFORNIA.

## FACTUAL BACKGROUND

The record discloses a most unusual background, both procedural and factual. Appellant, a seaman who had cared for and served aboard the vessel CALIFORNIA, entered into a sales contract with Captain Winningstad, part owner and master of the schooner, on February 2, 1975. In that agreement, appellant purchased 10% of Winningstad's 50% interest in the vessel. The contract provided, among other things, ". . . that Buyer may acquire, for additional monies and/or services to be declared at a later date, an additional share in said vessel not to exceed 40 per cent of my [Winningstad's] total interest." Appellant alleges that on February 5, 1975, Winningstand orally agreed that appellant was to receive an additional 5% interest for each additional $1,500.00 in money or services contributed to the vessel and that under that agreement he contributed a total of $32,650.00.

On November 23, 1976, appellant, acting *in propria persona*, brought a "possessory libel in rem" action in the United States District Court for the District of Oregon asking that he be declared the lawful owner of the CALIFORNIA. On November 29, 1976, the magistrate to whom the case was assigned, determined that appellant, because of his seaman status, could institute the claim without prepayment of fees or costs [28 U.S.C. § 1916]. Appellant urges that he was also proceeding *in personam* against the owners of the vessel because he was seeking an ownership interest in the schooner, as against the other interested parties. The other parties with an interest in the boat, Helen Roll, who owned a 50% interest, and the personal representative of Winningstad's estate [Winningstad died on July 9, 1975], were served with process.

Inasmuch as no answer or responsive papers were filed, the Clerk of the Court on March 18, 1977, ordered that default be entered against the schooner. Appellant, on March 21, 1977, met with the magistrate to determine if a default judgment should be entered. The magistrate then allegedly said "I see no reason why you should not have your boat. I will prepare the judgment. Good fishing." Appellant, based on this assurance, took possession of the CALIFORNIA on or about April 1, 1977, and sailed down the Columbia River toward Astoria. On March 25, 1977, the same magistrate had written a letter to appellant which in substance informed the appellant that he was not entitled to a default judgment, primarily because the district court did not have jurisdiction over the CALIFORNIA by reason of failure to take possession of or arrest the vessel. In the meantime, appellee Adventure purportedly acquired the interest of Mrs. Roll and the interest of Winningstad's estate. Adventure, on April 5, 1977, filed an action for possession and ownership of the schooner, for damages from appellant for injury to the schooner while in his possession, and for the legal expenses incurred in dispossessing him. In his defense, the appellant alleged that the default had already been entered against appellee's predecessors in interest and counterclaimed for ownership of the schooner or, in the alternative, a maritime lien for the value of his contribution in the vessel. On April 5, 1977, the CALIFORNIA was arrested by the United States Marshal at Rainier, Oregon, and returned to Portland by a custodian appointed by the court.

These actions were consolidated for trial. Before trial, Adventure transferred its interest in the vessel to Vessel Zodiac, Inc., one of the appellees, who intervened. The trial was held on May 17, 1978, with the magistrate presiding. At the commencement of the trial, the appellant was in the State of Maine and claimed he was suffering from the flu and could not be in attendance. His counsel made an appearance and asked for a continuance both before and during the trial. These requests were denied. Appellant did not appear personally at the trial. The magistrate filed an "opinion" which stated that: (1) appellant had no

maritime lien against the schooner *California*; (2) appellant had a 5% ownership interest in the *California*; (3) Vessel Zodiac, Inc., appellee, had a 95% ownership interest in the *California* and the right to possession of the vessel; and (4) Youth Adventure, Inc., appellee, was entitled to recover a money judgment against appellant in the amount of $5,610.00.

Appellant filed objections to the magistrate's findings of fact and conclusions of law and appellees filed an opposition to the objections. The clerk informed the parties that since they had consented to a trial by the magistrate they had no right to submit objections to the findings. The clerk went on to say that "Judgment will be entered on the decision of Judge Juba, which constituted the findings of fact and conclusions of law." Later, the district judge, without considering the objections of the parties, signed the judgment "Based on the Court's findings of fact and conclusions of law."

After various posttrial motions in the district court, this appeal followed. Appellant raises numerous issues. We need not reach the substantive issues [1] presented because the district court failed to follow the procedural requirements of the Magistrates Act, 28 U.S.C. § 636. Therefore, we reverse and remand for further proceedings.

## DISCUSSION

The statutory framework which governed magistrates during the period in question provided, in relevant part:

"(1) Notwithstanding any provision of law to the contrary—

"(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

"(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

"(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

"(2) A judge may designate a magistrate to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate to serve as a special master in any civil case, upon consent of the parties, without re-

---

1. These issues include: (1) whether the magistrate's denial of a continuance was an abuse of discretion; (2) whether the court erred in failing to enter default judgment for appellant because the vessel had not been arrested; (3) whether the award of damages and custodian costs was improper; and (4) whether the award of attorney's fees was proper.

gard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

"(3) A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

"(4) Each district shall establish rules pursuant to which the magistrates shall discharge their duties." 28 U.S.C. § 636(b) (1976).

2. We express no opinion on the constitutionality of 28 U.S.C. § 636(c) (1980). One commentator has concluded that the 1979 Act is unconstitutional. Note, *Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act,* 80 Colum.L.Rev. 560 (1980).

3. The Senate Judiciary Committee, in commenting on the 1979 legislation, has said that "The bill considered here would *enlarge* upon the jurisdiction of magistrates to actually conduct trials of cases and to direct the entry of judgments in both civil and criminal cases." S.Rep.No. 74, 96th Cong., 1st Sess. at 4 (1979), U.S.Code Cong. & Admin.News 1979, pp. 1469, 1472 (emphasis added). The Committee noted that "Magistrates presently have no explicit authorization to finally decide civil cases. The bill would explicitly permit such jurisdiction and thus codify and replace the experimental practice now being carried on in a number of districts under 28 U.S.C. 636(b)(2) and (b)(3)." *Id.* There is no unequivocal statement in the legislative history that we have uncovered which indicates congressional approval or disapproval of the prior "experimental" practice. The authority in the current § 636(c) is referred to as "new jurisdiction." *Id.* at 5, U.S.Code Cong. & Admin.News 1979, p. 1473. The "new" authority is variously referred to in the reports and hearings·as an "expansion" or as merely a "clarification" of what had earlier been implicit. The statutory authority for the prior "experimental" practice is referred to as "unclear" and "ambiguous."

Some have suggested that earlier versions of the Magistrates Act authorized a magistrate, with the consent of the litigants, to exercise the powers of an Article III judge. In *Gelfgren v. Republic National Life Ins. Co.,* 451 F.Supp. 1229 (C.D.Cal.1978), a district court in this circuit held that there was no constitutional prohibition to referring a case to a magistrate for trial pursuant to § 636(b)(3), after stipulation of the parties, or to including in the reference authorization for entry of judgment by the magistrate. Several commentators have supported this interpretation which would give a magistrate adjudicatory power in civil cases with the consent of the parties. Silberman,

The statute, as it existed in 1976, clearly did not explicitly grant a magistrate the authority to try and decide a civil case. The statutory authority of magistrates to try civil cases with the consent of the parties is, however, no longer in question. The 1979 Magistrates Act explicitly provides for case dispositive jurisdiction for magistrates in civil cases when the parties consent. 28 U.S.C. § 636(c) (1980).[2] There was some question, however, whether consensual references to magistrates for trial were permissible under the 1976 Act.[3] Two courts

*Masters and Magistrates Part II: The American Analogue,* 50 N.Y.U.L.Rev. 1297 (1975); Comment, *An Adjudicative Role for Federal Magistrates in Civil Cases,* 40 U.Chi.L.Rev. 584, 596–7 (1973).

The courts of appeals have, however, not been so willing to allow magistrates to exercise the full range of judicial authority possessed by an Article III judge. The courts of appeals, typically expressing both statutory and constitutional reservations, have refused to entertain appeals from decisions of magistrates. *Horton v. State Street Bank & Trust Co.,* 590 F.2d 403 (CA1 1979); *Taylor v. Oxford,* 575 F.2d 152 (CA7 1978); *Reciprocal Exchange v. Noland,* 542 F.2d 462 (CA8 1976). The court in *Horton* stated that "Furthermore, Congress has delineated the powers of magistrates with some specificity; and although the law provides that 'additional duties' may be assigned to them, the discretionary authority to enter a final judgment is so fundamentally an exclusive power of an Article III court that we are unwilling to find it within the contemplation of this catch–all, 'additional duties' provision." 590 F.2d at 404. In *Noland,* the Eighth Circuit commented that "Since this order retains in the district judge the fundamental adjudicatory rule, the reference of the present case for 'recommended' disposition did not contravene the requirement of Article III of the Constitution that the judicial power of the United States be vested in federal judges." 542 F.2d at 463.

Others have taken a more restrictive view of the magistrate's statutory powers prior to the 1979 amendments than did the court in *Gelfgren.*

"Prior to the 1979 Act, statutory authorization for such rules authorizing magistrate trials was purportedly provided by 28 U.S.C. § 636(b)(3) (1976), which permits magistrates to perform 'such additional duties as are not inconsistent with the Constitution and laws of the United States.' The legislative history of this provision indicates, however, that Congress contemplated that these 'additional duties' would be largely administrative or pretrial, leaving more time for trials to the judges." Note, *Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act,* 80

of appeals have recently adopted similar approaches to the problem.

In *Muhich v. Allen*, 603 F.2d 1247 (CA7 1979), the Seventh Circuit concluded that the Magistrates Act and the rules of the local district court adopted pursuant thereto authorized a magistrate to conduct the trial of civil cases with the consent of the parties. The court found that any possible statutory or constitutional objections to the scope of the power given to the magistrate were cured because the district court judge conducted a *de novo* review of the proceedings. The magistrate was not permitted to exercise adjudicatory responsibility and the court was of the view that the magistrate was simply assisting the Article III judge in his ultimate decision making function. The court held that

> "... pursuant to an order of the district court, a consensual reference to a United States Magistrate for purposes of conducting a civil trial is proper, where the district court reviews *de novo* the proceedings held before the magistrate, the findings and recommendations of the magistrate filed with the court, and the objections, if any, of the parties filed thereto, and where the district court directs the entry of a final judgment supported by the evidence adduced at trial and the law applicable thereto. Under the facts presented in this appeal, we find the procedure utilized by the district court satisfied this standard." 603 F.2d at 1252.

The Fifth Circuit, in *Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352 (CA5 1980), stated that "We find that consensual references to a magistrate for trial on the merits were permitted under subsection (b)(3) independent of Rule 53 of the Federal Rules of Civil Procedure and subsection (b)(2) (permitting appointment of a magistrate as a special master) even before the 1979 amendments to the statute." *Id.* at 355. (Footnote omitted). This position has support in the legislative history.[4] It is consistent with congressional intent to encourage innovative experimentation in the use of magistrates. And, it does not violate congressional concern that ultimate adjudicatory responsibility be reserved to an Article III judge.

■ As long as the district court judge engages in a *de novo* review, statutory and constitutional objections are removed. As the *Calderon* court concluded "we infer that any power to refer dispositive matters under § 636(b)(3) carries with it a requirement of 'de novo determination' by the district judge of the portions of the magistrate's findings to which a party objects." *Id.* at 355. The Second Circuit has noted that

> "District court review after a trial before a magistrate or master is not a meaningless exercise. Rather, the procedure comports with the fundamental congressional policy underlying the Magistrates Act—to *aid* the courts in their ultimate decision making function. Subjecting the acts of magistrates and masters to district court scrutiny also avoids possible constitutional infirmities." *Sick v. City of Buffalo, N.Y.*, 574 F.2d 689, 692–3 (CA2 1978).

We adopt the view of consensual references under the 1976 Act expressed by the Seventh and Fifth Circuits in *Muhich* and *Calderon*. It is, therefore, statutorily permissible for a case to be referred to a magistrate, upon consent of the parties, for the conduct of a civil trial. The reference to the magistrate, in order to be consistent with the statute, must only be for the pur-

---

Colum.L.Rev. 560, 567 n. 47 (1980). *See generally* Note, 2 W.N.Eng.L.Rev. 523 (1980). Judge Swygert has taken a similar view:

"I believe it is apparent from the legislative history, however, that Congress contemplated these additional duties to be rather administrative in nature and never considered the possibility that this section would be read as authorizing a magistrate to do all but enter final judgment in a federal civil trial." *Muhich v. Allen*, 603 F.2d 1247, 1254 (CA7 1979) (Swygert, J., dissenting) (footnote omitted).

4. After reviewing the relevant legislative history the First Circuit has said that "Most of the voluminous testimony and written presentations were concerned with the duties which, *as of course*, could be assigned to magistrates. But what little was said makes it clear that it was assumed as given that consensual references were available." *DeCosta v. Columbia Broadcasting System, Inc.*, 520 F.2d 499, 506 (CA1 1975).

pose of aiding the district judge in the exercise of his decision making authority. Consequently, the parties must be given an opportunity to submit objections to the district judge and the judge must make a *de novo* review.[5] We now must evaluate the procedures followed below in order to determine whether the requirements of the statute were satisfied.

At the outset, we note that by custom and pursuant to local rule, the United States District Court for the District of Oregon has used its magistrates extensively. The District of Oregon interpreted 28 U.S.C. § 636(b)(3) (1976) to authorize a magistrate, after consent of the parties, to try a civil case.

"The District of Oregon has interpreted the Magistrates Act broadly. We interpret the act to authorize us to refer to magistrates the trial of any civil case— jury or nonjury—with the consent of the parties. We infer this authority not from the special master provision but from the 'additional duties' section of the act, 28 U.S.C. 636(b)(3). Where the parties have so consented, a district judge accepts without review the magistrate's determination of a trial."

*Hearing before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary*, 96th Cong., 1st Sess. 16 (1979) (statement of Chief Judge Skopil, District of Oregon). The District of Oregon, in 1977 (prior to

trial in this case), promulgated local rules to govern its United States Magistrates. Rule 5, entitled Trials of Civil Cases by Consent, provided: "Where the parties consent, the United States Magistrates assigned in Portland and Eugene are authorized to try any civil case without further order of the court. In all such cases the clerk is directed to enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure."[6]

In the instant case, it would appear that the parties consented to have the magistrate make an initial determination of the factual issues in the case. The magistrate conducted various proceedings and ultimately submitted his "opinion." Apparently, the magistrate did not envisage his "opinion" as a recommended disposition. He closed his "opinion" with this paragraph: "The parties shall submit a judgment order consistent with this opinion. The above shall constitute findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a)." There was no suggestion that the "opinion" was to be considered as a "recommendation" or as something analogous to the findings of a master pursuant to F.R.Civ.P. 53.

Clearly there is confusion as to what the parties consented to and as to the scope of authority purportedly given the magistrate. There is no written consent or order of referral to the magistrate in the record. The consensual reference seems to have been done informally.[7] The problem cen-

---

5. We note that there is some conflict as to the appropriate standard for district court review of the magistrate's findings after a trial by consensual reference. We agree with the Fifth Circuit's conclusion that the district judge should make a *de novo* determination of the portions of the magistrate's findings to which a party objects. *Calderon, supra* at 355–356. The Seventh Circuit, in *Muhich*, has commented on the weight to be given a magistrate's findings in this situation. "These findings and recommendations carried only such weight as their merit commanded and the sound discretion of the judge warranted. *Mathews v. Weber*, 423 U.S. 261, 275, 96 S.Ct. 549 [556], 46 L.Ed.2d 483 (1976)." 603 F.2d at 1252.

6. The case was apparently referred to the magistrate pursuant to this rule. The rule was not followed completely because the district judge actually signed the judgment.

7. The procedures followed below were described in a certification prepared by the Clerk of the District Court that was attached as an appendix to appellee's brief on appeal. The certification stated that,

"I, Robert M. Christ, Clerk of the United States District Court for the District of Oregon, certify that I was appointed to my position on January 14, 1971. During all times that I have occupied this office, our court has followed a master calendar system of case assignment. Proposed trial calendars are prepared by me, or by my Chief Deputy, for submission to the judicial officers of the court for approval.

"At the direction of the court, prior to preparing the proposed trial calendars it has been my consistent practice to consult personally with the attorneys whose cases are to be assigned trial dates. My purpose in such consultation is to determine trial readiness, the anticipated length of trial, and to inquire of potential

ters upon the finality of the magistrate's "opinion" and the parties' right to submit objections thereto.[8]

In this case, the record is clear that no review was made by the district judge. Appellant submitted objections to the magistrate's findings in a timely fashion. Appellees' attorney, an experienced local practitioner, then stated in his opposition to appellant's objections: "This matter was tried before Magistrate Juba with consent of the parties. Under such circumstances, the findings and conclusions of the Magistrate have the same dignity as findings and conclusions of a District Judge and there is no right of a de novo determination before a District Judge. Ruling on the objections to the findings and conclusions are for the Magistrate to decide."

After appellant's objections and appellees' opposition to objections were submitted, the Clerk of the District Court informed the parties that the procedure they were following was not available to them and that "Judgment will be entered on the decision of Judge Juba, which constituted the findings of fact and conclusions of law." The opening line of the judgment signed by the district judge reads: "Based on the Court's findings of fact and conclusions of law." There is, however, no indication that the district judge engaged in any sort of *de novo* review of the proceedings or that he

considered the parties' objections to the magistrate's findings of fact and conclusions of law. In fact, the district court judge's role in the proceedings appears to have been simply *pro forma*. Pretermitting the constitutional problems that an abdication of adjudicatory responsibility would raise, it is clear that these procedures did not satisfy the statutory requirements.

We hold that because the district court did not follow the statutory requirements the judgment must be reversed and the case remanded. On remand, the district judge should entertain the objections to the magistrate's "opinion" and hear such other proceedings as may be appropriate. The exercise of this *de novo* review will serve to satisfy the constraints of the Magistrates Act and avoid possible constitutional infirmities.

REVERSED AND REMANDED.

---

problems for the court. My Chief Deputy follows the same practice.

"United States Magistrate George E. Juba was appointed on January 14, 1971. United States Magistrate Edward Leavy was appointed on October 18, 1976. Since January 14, 1971, and continuing to the present, it has been the policy of this court to afford civil litigants the opportunity to agree to try their cases before a Magistrate who would preside at the trial as a district judge would, subject to the overall supervision of the court. The judges of this court have requested that in the preparation of trial calendars, counsel be asked if they will agree to trial before a Magistrate in accordance with this policy. My Chief Deputy and I regularly make this inquiry. Cases are not assigned to Magistrates for trial unless the full agreement of the parties is given.

"From personal notes made prior to February 20, 1978, I recall that counsel of record in *William Coolidge v. Schooner California*, Civil No. 76–1019, and *Youth Adventure, Inc., et al. v. The Oil Screw California, et al.*, Civil No.

77–284, each informed me that trial before a Magistrate was acceptable. With the approval of the court, the cases were assigned to Magistrate George E. Juba for trial.

"I certify that the foregoing is a true statement.

"DATED this 19th day of July, 1979.

/s/ Robert M. Christ
Robert M. Christ, Clerk"

8. In light of our disposition of the case the consent issue is not important. We note the oft–expressed insistence that consent to a trial before a magistrate be voluntarily and knowingly made. *See* 28 U.S.C. § 636(c) (1980); H.Conf.Rep.No. 444, 96th Cong., 1st Sess. 8 (1979); Note, *Article III Constraints and the Expanding Civil Jurisdiction of Federal Magistrates: A Dissenting View*, 88 Yale L.J. 1023 (1979). We feel compelled to caution the District of Oregon that the dictates of the Magistrates Act with respect to consent must be scrupulously followed.