BOOCHEVER, Circuit Judge:
 

 This case concerns the constitutionality of section 636(c) of the Magistrates Act which allows magistrates, with consent of the parties to the litigation, to conduct civil trials and enter judgments. 28 U.S.C. § 636(c) (Supp. V 1981). Because this procedure offends article III of the Constitution, we reverse and remand for
 
 de novo
 
 review by the district court.
 

 FACTS
 

 Pacemaker Diagnostic Clinic of America, Inc. charged Instromedix, Inc. with infringement of a patent. Instromedix denied infringement and alleged that the patent was invalid. The parties consented to have the case tried by a magistrate sitting without a jury. The magistrate found the patent valid, but not infringed.
 
 [1]
 
 Both parties appealed to this court. We raised the issue of the magistrate’s jurisdiction
 
 sua sponte
 
 because of the possible unconstitutionality of 28 U.S.C. § 636(c), which empowered the magistrate to enter judgment in this case.
 
 [2]
 
 Because we hold that the provision is unconstitutional, we do not reach the merits of the patent issues. DISCUSSION
 

 I.
 

 Background
 

 Article III of the United States Constitution vests the judicial power in the Supreme Court and in such inferior courts as Congress may establish. It provides that the judges shall hold their offices during good behavior and shall not have their compensation diminished during their continuance in office. Because the office of federal magistrate is not similarly protected, we must decide whether an amendment to the Magistrates Act runs afoul of the article III dictates. The 1979 amendments to the Magistrates Act added, among other changes, 28 U.S.C. § 636(c), which confers judicial power on the magistrates, with consent of the parties, to conduct any or all proceedings in a jury or nonjury civil case and order the entry of judgment. 28 U.S.C. § 636(c)(1). The magistrate must be specially designated by the district court to exercise this jurisdiction.
 
 Id.
 
 Procedures are set up to prevent district judges or magistrates from coercing the parties to give their consent. 28 U.S.C. § 636(c)(2). The district judge has the power to vacate the reference of the case to the magistrate. 28 U.S.C. § 636(c)(6). Appeals from the magistrate’s judgment may be taken to the court of appeals in the same manner as an appeal from any other judgment of the district court. 28 U.S.C. § 636(c)(3). Alternatively, the parties may consent to have
 
 *1308
 
 the appeal heard by the district court. 28 U.S.C. § 636(c)(4).
 

 Even before the 1979 amendments, magistrates were allowed to conduct entire trials in some districts.
 
 [3]
 
 28 U.S.C. § 636(b)(3) (1976), still in effect, allows a district judge to assign a magistrate duties that are not inconsistent with the Constitution and laws of the United States. In this circuit,
 
 Coolidge v. Schooner California,
 
 637 F.2d 1321 (9th Cir.),
 
 cert. denied,
 
 451 U.S. 1020, 101 S.Ct. 3011, 69 L.Ed.2d 392 (1981) interpreted this language as broad enough to allow a magistrate to conduct entire trials. To be consistent with the statute and the constitution, however, the district judge must engage in a
 
 de novo
 
 review of the proceedings. In this way, it is the district judge and not the magistrate who exercises the article III powers.
 
 See also Britt v. Simi Valley Unified School District,
 
 708 F.2d 452 at 454 (9th Cir.1983) (per curiam).
 

 By contrast, the 1979 addition of 28 U.S.C. § 636(c), here in issue, explicitly allows trial by magistrate, but does not provide for
 
 de novo
 
 review by the district judge.
 
 [4]
 

 To the same effect as
 
 Coolidge
 
 is
 
 United States v. Raddatz,
 
 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).
 
 Raddatz
 
 concerned the constitutionality of 28 U.S.C. § 636(b)(1)(B), which permits a district court to refer to a magistrate a motion to suppress evidence in a criminal case. Under that subsection, the magistrate conducts a hearing and submits proposed findings of fact and recommendations for disposition. The parties may file objections. The district court judge is then charged with making a
 
 de novo
 
 determination of the portions of the magistrate’s report to which objection is made. The judge may freely accept or disregard the magistrate’'- finding and may take additional evidence. The Supreme Court found that because the district judge made the final determination, due process and article III rights were adequately protected. The Court declined to decide whether Congress could have delegated the task of rendering a final decision to a non-article III officer. 447 U.S. at 681, 100 S.Ct. at 2415.
 
 [5]
 
 We must address that issue in the present case.
 

 II.
 

 Exercise of Article III Powers by Magistrates
 

 The Supreme Court recently addressed the issue of the exercise of judicial power by non-article III officers in
 
 Northern Pipeline Construction Co. v. Marathon Pipeline Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).
 
 [6]
 
 A plurality of the Supreme Court plus two concurring justices held the bankruptcy court system to be unconstitutional. The plurality reasoned that bankruptcy judges were not article III judges, that the bankruptcy courts were not constituted as article I courts, and that the bankruptcy courts could not properly be considered “adjuncts” to the district courts. The plurality also held that the invalidity of the bankruptcy courts would only be applied prospectively. The
 
 Northern Pipeline
 
 analysis mandates a similar result in our case.
 

 
 *1309
 

 A. Lack of Article III Attributes
 

 Magistrates are clearly not article III judges.
 
 United States v. Jenkins,
 
 No. 82-1352, slip op. at 3108 n. 1 (9th Cir. June 28, 1983);
 
 United States v. Saunders,
 
 641 F.2d 659, 663 (9th Cir.1980),
 
 cert. denied,
 
 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). Article III judges are distinguished by life tenure during good behavior and salary protection. U.S. Const, art. Ill, § 1. Life tenure and salary protection serve the purpose of protecting the independence of the judiciary.
 
 Northern Pipeline,
 
 102 S.Ct. at 2864-66. By contrast to article III judges, federal magistrates serve for eight year terms and must retire at age seventy. 28 U.S.C. §§ 631(d), (e) (Supp. Y 1981). Magistrates may also be removed from office during a term for incompetency, misconduct, neglect of duty, or physical or mental disability, and a sitting magistrate’s office may be terminated if the Judicial Conference decides that the office is no longer needed. 28 U.S.C. § 631(i) (Supp. V 1981). The salaries of magistrates are also not protected. Salaries may be changed by the Judicial Conference to further the expeditious administration of justice. 28 U.S.C. § 633(c) (Supp. V 1981).
 
 [7]
 

 B. Article I Courts
 

 Article I of the Constitution empowers Congress to establish legislative courts separate from the article III system. U.S. Const, art. I, § 8, cl. 9. The magistrate system does not qualify under this provision. As explained in
 
 Northern Pipeline,
 
 Congress may only establish separate courts in a limited class of cases “in which the grant of power to the Legislative and Executive Branches was historically and constitutionally so exceptional that the congressional assertion of a power to create legislative courts was consistent with, rather than threatening to, the constitutional mandate of separation of powers.” 102 S.Ct. at 2868. Examples include courts for the territories and the District of Columbia, courts martial, and legislative courts and administrative agencies created to adjudicate cases involving “public rights”.
 
 Northern Pipeline,
 
 102 S.Ct. at 2868-71. The delegation to the magistrates is not so limited, as they may try any jury or nonjury matter with the consent of the parties. 28 U.S.C. § 636(c)(1).
 
 [8]
 
 Therefore, 28 U.S.C. § 636(c) cannot be construed as establishing legislative courts.
 

 C.Magistrates as Adjuncts of the District Court
 

 It is also contended that 28 U.S.C. § 636(c) establishes the magistrates as “adjuncts” to the district courts.
 
 [9]
 
 The
 
 Northern Pipeline
 
 plurality reviewed
 
 Crowell v. Benson,
 
 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed.
 
 *1310
 
 598 (1932), and
 
 United States v. Raddatz,
 
 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), cases where Congress’ use of administrative agencies and magistrates as adjuncts to article III courts had been upheld. The plurality took these cases as establishing two methods under which Congress may constitutionally vest traditionally judicial functions in non-article III officers. The first is that when Congress creates a substantive federal right, it possesses substantial discretion to prescribe the manner in which that right may be adjudicated. No newly created substantive federal rights are involved here, as the magistrates are empowered to try any federal case within the jurisdiction of the district courts. Therefore, section 636(c) cannot be justified on this ground. The second method, crucial here, is by a restricted delegation whereby,
 

 the functions of the adjunct must be limited in such a way that “the essential attributes” of judicial power are retained in the Art. Ill court. Thus in upholding the adjunct scheme challenged in
 
 Crowell,
 
 the Court emphasized that “the reservation of full authority to the court to deal with matters of law provides for the appropriate exercise of the judicial function in this class of cases.”
 
 Ibid.
 
 And in refusing to invalidate the Magistrates Act at issue in
 
 Raddatz,
 
 the Court stressed that under the congressional scheme “ ‘[t]he authority — and the responsibility — to make an informed, final determination ... remains with the judge,’” 447 U.S., at 682 [100 S.Ct. at 2415], quoting
 
 Mathews v. Weber,
 
 423 U.S. 261, 271 [96 S.Ct. 549, 554, 46 L.Ed.2d 483] (1976); the statute’s delegation of power was therefore permissible, since “the ultimate decision is made by the district court,” 447 U.S. at 683 [100 S.Ct. at 2416].
 

 Northern Pipeline,
 
 102 S.Ct. at 2876-77. The plurality also stated, “[c]ritical to the Court’s decision to uphold the Magistrates Act was the fact that the ultimate decision was made by the district court. 447 U.S., at 683 [100 S.Ct. at 2416].” 102 S.Ct. at 2877.
 
 See also Mathews v. Weber,
 
 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976).
 

 This is precisely the problem with 28 U.S.C. § 636(c). The magistrate makes the ultimate decision and enters a final judgment. Thus the provision cannot pass constitutional muster as authorizing an adjunct function of the district court.
 

 III.
 

 Possible Saving Provisions
 

 The use of magistrates to conduct trials and enter final judgment implicates both due process and article III concerns. We recognize that a due process right may be waived voluntarily,
 
 [10]
 
 but there is more at stake here than the litigants’ due process right to a decision by an article III judge. We believe t, it the Constitution establishes a framework of government that cannot be altered by statute nor waived by litigant consent. The independence of the judiciary, the distribution of power, and the separation of powers are at issue here. With these concerns in mind we consider the possible constitutional saving devices.
 

 A. Litigant Consent
 

 The strongest argument in favor of constitutionality is based on the requirement of litigant consent.
 
 [11]
 
 The Act provides that
 
 *1311
 
 the parties must give their consent before a magistrate may conduct a trial and enter a final judgment. 28 U.S.C. § 636(c)(1).
 

 No case squarely holds that litigant consent will solve the constitutional problems.
 
 [12]
 
 In
 
 Kimberly v. Arms,
 
 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764 (1889), the Supreme Court held that upon the consent of the parties a master could hear the matter and report findings of fact and law to the judge. Responsibility for the ultimate decision remained with the judge, however, and so “judicial” power was not vested in the master. To the same effect are the
 
 Coolidge
 
 and
 
 Raddatz
 
 cases, previously discussed.
 

 The analogy to arbitration has been suggested. If the parties can agree to submit their controversy to an arbiter, bypassing the article III judiciary altogether, the argument runs, they should also be able to authorize a magistrate to resolve their case. The analogy is inapt. When the parties use an arbiter, they do not invoke the judicial power of the United States courts. An arbiter may render a decision, but its effects flow from the parties’ contractual agreement to abide by it, not from an exercise of judicial power. The arbiter has no authority to enter a judgment, and the parties must look to the courts for enforcement of an arbitration award. Also, an arbiter’s decision is generally not subject to judicial review on the merits.
 
 See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,
 
 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). By contrast, when parties agree to trial by magistrate, they are invoking the judicial system.
 
 [13]
 
 The parties use the judicial process, and the magistrate enters a judgment in the name of the court. 28 U.S.C. § 636(c)(1), (3). The magistrate’s opinion is subject to review on the merits. 28 U.S.C. § 636(c)(3), (4).
 

 The basis of the consent argument is that the right to an article III judge is a due process right, inuring to the benefit of litigants, and therefore waivable like any other due process right.
 
 See
 
 footnote 10
 
 supra. Glidden Co. v. Zdanok,
 
 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962) refutes this contention. In
 
 Glidden,
 
 the Supreme Court reviewed cases in which a judge of the Court of Claims sat by designation on a panel of the second circuit and a judge of the Court of Customs and Patent Appeals presided by designation over a trial in the federal district court. Prior to
 
 Glidden,
 
 judges of the Court of Claims and of the Court of Customs and Patent Appeals had been held to be article I judges.
 
 [14]
 
 The Supreme Court found no constitutional infirmity because it held that these courts had been reconstituted as article III courts. The Court indicated that article I judges may not bind litigants in article III courts, no matter how fairly they run the proceedings. The plurality specifically praised the qualifications, fairness, and impartiality of the judges involved. 370 U.S. at 533, 82
 
 *1312
 
 S.Ct. at 1463 (plurality opinion). Due process had been satisfied by the lower court proceedings. If the right to an article III judge was only a due process right, the plurality would have terminated its discussion by noting the fair proceedings.
 
 See
 
 370 U.S. at 533, 82 S.Ct. at 1463.
 

 The Court’s opinion in
 
 United States v. Raddatz,
 
 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) makes it clear that the displacement of article III judges by magistrates implicates both due process and article III concerns. The Court noted that having magistrates conduct suppression hearings satisfied due process by providing a hearing appropriate to the nature of the case;
 
 Id.
 
 at 677-81, 100 S.Ct. at 2413-15. If only due process were at stake, the Court’s inquiry would have then ended. Instead, the Court went on to discuss the article III objections to magistrates holding such hearings,
 
 id.
 
 at 681-83, 100 S.Ct. at 2415-16, concluding that the article III demands are satisfied where “the ultimate decision is made by the district court.”
 
 Id.
 
 at 683, 100 S.Ct. at 2416.
 
 [15]
 

 By analogy, two adverse parties from the same state cannot waive the diversity of citizenship requirement and establish jurisdiction in the federal courts.
 
 [16]
 
 Likewise, litigants cannot waive the jurisdictional requirement of an article III court.
 

 Article III protects institutional concerns of our system of government that due process addresses only incidentally.
 
 See Northern Pipeline,
 
 102 S.Ct. at 2865 & n. 10-2866. For example, if Congress created an administrative agency empowered to hold fair trials in all diversity cases, due process might be satisfied even though such trials would threaten constitutional policies concerning the separation of powers, the distribution of governmental power, and the protection of judicial independence. Under those circumstances the delegation to an administrative agency would be unconstitutional, even though complying with due process.
 

 Therefore, rather than being exclusively a due process right of the litigants waivable by them, the requirement of an article III judge is jurisdictional and thus not waiva-ble.
 

 B. Internal Delegation
 

 One of the dangers of diluting article III jurisdiction is the threat to the separation of powers. For example, when cases involving more than the rights of the parties before the court are committed to administrative agencies which exist at the pleasure of the political branches, there is a possibility that the exercise of judicial power will be subject to influence by those political branches. However, here the magistrates are a part of the judicial branch and it is argued that if their independence is in question, they are under the control of judges, not Congress or the President. Litigants and judges, both within the judicial branch, and not Congress or the President, decide which cases go to a magistrate rather than to an article III judge. 28 U.S.C. § 636(c). Therefore, it is argued that the magistrate system poses no separation of powers problem. Threats to the judicial decisionmaker’s independence from within the judicial branch, however, may be just as
 
 *1313
 
 serious as those from the executive or legislative branches. Magistrates might be wary of delivering unpopular opinions if the results of such decisions were curtailment of their authority, future reference in only the most mundane or onerous cases or failure to be reappointed.
 
 See
 
 Comment,
 
 Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act,
 
 80 Colum.L. Rev. 560, 591 (1980);
 
 Northern Pipeline,
 
 102 S.Ct. at 2865 n. 10 (“The guarantee of life tenure insulates the individual judge from improper influences not only by other branches but by colleagues as well”.)
 

 A more direct answer is that the magistrates are not insulated from legislative pressures. Their salaries
 
 [17]
 
 and their very office depend on congressional action.
 

 “Moreover, the internal delegation argument ignores the plain import of article Ill’s language, which authorizes article III judges, and not their delegates, to exercise judicial power.” Comment,
 
 Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act,
 
 80 Colum.L.Rev. 560, 590 (1980) (footnote omitted).
 

 We conclude that internal delegation does not elevate § 636(c) to the attributes demanded by article III.
 

 C. Appellate Review
 

 The argument is made that article III is satisfied because the magistrate’s decision can be appealed to an article III court, either to the district court or to the court of appeals. 28 U.S.C. § 636(c)(3)-(5);
 
 see Crowell v. Benson,
 
 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932).
 

 The Supreme Court implicitly rejected this contention in
 
 Glidden Co. v. Zdanok,
 
 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962). In one of the two cases consolidated for hearing in
 
 Glidden,
 
 a retired judge of the Court of Customs and Patent Appeals, sitting by designation in the U.S. district court, presided over a criminal trial. The Court was not swayed by the fact that the case had been heard on appeal by two article III courts, the court of appeals and the Supreme Court itself.
 
 See also Ward v. Village of Monroeville,
 
 409 U.S. 57, 61-62, 93 S.Ct. 80, 83-84, 34 L.Ed.2d 267 (1972).
 

 Northern Pipeline
 
 even more emphatically rejects the appellate review argument. The Bankruptcy Reform Act of 1978 provided for appeals from the bankruptcy court either directly to the district court and then to the court of appeal or alternatively to a panel of bankruptcy judges. 28 U.S.C. §§ 1293, 1334, 1482 (Supp. V 1981). Justice White in dissent suggested that these provisions for appellate review by article III courts satisfied article III objections. 102 S.Ct. at 2894 (White, J., dissenting). The plurality labelled this reasoning “incorrect”. 102 S.Ct. at 2873 n. 23 (plurality opinion). The plurality later stated that the text of article III and the Court’s “precedents make it clear that the constitutional requirements for the exercise of judicial power must be met at all stages of adjudication, and not only on appeal”. 102 S.Ct. at 2879 n. 39.
 

 We conclude that appellate review by the district court and the court of appeals will not save section 636(c).
 

 IV.
 

 Retroactivity
 

 Having held 28 U.S.C. § 636(c) unconstitutional, we must consider whether the holding should be applied retroactively or only prospectively. The question is of enormous importance, as hundreds of cases across the country have been tried by magistrates with the consent of the parties.
 
 [18]
 

 
 *1314
 

 Northern Pipeline
 
 applied its holding that bankruptcy courts are unconstitutional prospectively. In doing so, the plurality considered three factors. The first is whether the holding in question decided an issue of first impression whose resolution was not clearly foreshadowed by earlier cases. The second is whether retrospective operation would further or retard the operation of the holding in question. The third is whether retroactive application could produce substantial inequitable results in individual cases. 102 S.Ct. at 2880 (quoting
 
 Chevron Oil Co. v. Huson,
 
 404 U.S. 97, 106, 107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)).
 

 It might be argued that our holding was foreshadowed by
 
 Northern Pipeline.
 
 In light of the weight of the arguments on both sides, the complexity of the issue, and the fact that other provisions of the 1979 Magistrates Act have been held constitutional,
 
 [19]
 
 we find that the result was not “clearly foreshadowed”.
 

 Retroactive application would not further the operation of the holding. It is very clear that retroactive application would visit substantial injustice and hardship upon those litigants who relied upon the 1979 Act’s vesting of jurisdiction in the magistrates. We hold that, with the exception of the case before us, our decision shall not apply to any case of this Circuit referred to a magistrate under the provisions of 28 U.S.C. § 636(c) prior to the date on which the mandate shall issue in this case. CONCLUSION
 

 The judgment of the magistrate is vacated. Our holding prohibits magistrates from rendering final decisions in civil cases, a function reserved for article III officers. It is clear that a magistrate may perform the lesser functions of presiding over a trial and recommending a disposition, so long as the ultimate decision is made by the district judge.
 
 Coolidge v. Schooner California,
 
 637 F.2d 1321, 1325 (9th Cir.),
 
 cert. denied,
 
 451 U.S. 1020, 101 S.Ct. 3011, 69 L.Ed.2d 392 (1981). Because the parties substantially and in good faith relied on the power of the magistrate to hear the case, and there is a constitutionally valid procedure available, we remand the case to the district judge to review the decision of the magistrate in the manner provided by 28 U.S.C. § 636(b)(1).
 

 VACATED and REMANDED.
 

 [1]
 

 .
 
 But see Mobil Oil Corp. v. Filtrol Corp.,
 
 501 F.2d 282, 293-94 (9th Cir.1974).
 

 [2]
 

 . The court would like to thank the parties and the
 
 amici curiae,
 
 the Department of Justice and the Oregon State Bar, for their helpful briefs on this difficult issue.
 

 [3]
 

 .
 
 E.g., Muhich v. Allen,
 
 603 F.2d 1247 (7th Cir. 1979);
 
 De Costa v. Columbia Broadcasting Systems, Inc.,
 
 520 F.2d 499 (1st Cir.1974),
 
 cert. denied,
 
 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83.
 
 See also
 
 Hearing before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 96th Cong., 1st Sess. 16 (1979) (statement of Chief Judge Skopil, District of Oregon) (concerning practice in District of Oregon prior to 1979 amendments).
 

 [4]
 

 . The court in
 
 Coolidge
 
 explicitly declined to state an opinion on the constitutionality of 28 U.S.C. § 636(c). 637 F.2d at 1324 n. 2.
 

 [5]
 

 . Only Justice Marshall, joined in dissent by Justice Brennan, reached this issue. 447 U.S. at 703-11, 100 S.Ct. at 2426-30. They concluded that magistrates may not enter final judgments.
 

 [6]
 

 . The justices did not agree upon an Opinion of the Court. Four justices agreed to the plurality opinion; two justices concurred in the judgment, with opinion; three justices dissented, with opinion; and Chief Justice Burger also dissented in a separate opinion.
 

 [7]
 

 . 28 U.S.C. § 634(b) limits the flexibility in adjusting the magistrates’ salaries. A magistrate’s salary may be reduced during his term in office but not below what it was at the beginning of the term.
 
 Id.
 

 [8]
 

 . The parties note that the underlying dispute here concerns patent law. The plurality in
 
 Northern Pipeline
 
 conceded the ability of Congress to create article I courts in certain specialized areas. For example, in the case of courts martial, the political branches of government possess extraordinary, constitutionally recognized control over the subject matter at issue. U.S. Const, art. I, § 8, els. 13, 14, art. II, § 2, cl. 1, amend. V. Congress’ power to grant patents is also explicitly authorized in the Constitution. U.S. Const, art. I, § 8, cl. 8. The plurality refused, however, to allow Congress to set up non-article III legislative courts pursuant to all of its enumerated powers. For example, the power to regulate bankruptcies is also committed to Congress in the Constitution, U.S. Const, art. I, § 8, cl. 4, but the plurality still rejected the bankruptcy courts as special legislative courts.
 

 Secondly, it is only coincidental that this case concerns patents. Magistrates have the power to try
 
 any
 
 jury or nonjury civil matter, not just patent cases. 28 U.S.C. § 636(c)(1).
 

 [9]
 

 .In
 
 United States v. Jenkins,
 
 No. 82-1352 (9th Cir. June 28, 1983), the government contended that magistrates are adjuncts to the district court and that consent by a criminal defendant to trial before a magistrate waives the right to trial before an article III judge. The court declined to reach these issues, slip op. at 3108, holding instead that the constitution does not require that crimes committed on a federal enclave be tried before an article III judge, slip op. at 3109-10.
 
 Jenkins
 
 thus left these issues open.
 

 [10]
 

 .
 
 See, e.g., Garner v. United States,
 
 424 U.S. 648, 653, 96 S.Ct. 1178, 1181, 47 L.Ed.2d 370 (1976) (right against self-incrimination);
 
 Schneckloth v. Bustamonte,
 
 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973) (unreasonable searches);
 
 Barker v. Wingo,
 
 407 U.S. 514, 529, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972) (right to speedy trial);
 
 Adams v. United States,
 
 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (right to jury trial and assistance of counsel); Fed.R.Civ.P. 38(d) (right to jury trial).
 

 [11]
 

 . The commentators are split on whether litigant consent cures the article III difficulties. Arguing that consent is effective to solve the constitutional problems are McCabe,
 
 The Federal Magistrate Act of 1979,
 
 16 Harv.J. on Legis. 343, 374-79 (1979); Silberman,
 
 Masters and Magistrates Part II: The American Analogue,
 
 50 N.Y.U.L.Rev. 1297, 1350-54 (1975) and Comment, An
 
 Adjudicative Role for Federal Magistrates in Civil Cases,
 
 40 U.Chi.L.Rev. 584 (1973). Taking the contrary view are Comment,
 
 Article III Limits on Article I Courts: The
 
 
 *1311
 

 Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act,
 
 80 Colum.L.Rev. 560, 592-96 (1980) and Comment,
 
 Article III Constraints and the Expanding Civil Jurisdiction of Federal Magistrates: A Dissenting View,
 
 88 Yale L.J. 1023, 1047-61 (1979).
 

 [12]
 

 .Heckers v. Fowler,
 
 69 U.S. (2 Wall.) 123, 17 L.Ed. 759 (1864) does not so hold. In
 
 Heckers,
 
 the parties agreed to refer the case to a referee, with the report of the referee to have the same force and effect as a judgment of the court. The parties agreed that on filing the report with the clerk of the court, judgment should be entered in conformity therewith, the same as if the case had been tried to the court. However, the opinion makes clear that the court must review the report and decide whether or not to accept it.
 

 Judgment, however, cannot in general be entered in conformity to the report or award until it is accepted or confirmed by the court. Reason for the rule is, that whenever it is presented, and before it is accepted, the party against whom it is made may object to its acceptance, ... Hearing is then had, and after the hearing the court may accept or reject the report; or, if either party desires it, the report may, for good cause shown, be recommitted.
 

 69 U.S. (2 Wall.) at 133 (footnote omitted).
 

 [13]
 

 .
 
 Muhich v. Allen,
 
 603 F.2d 1247, 1253 (7th Cir.1979) (Swygert, J., dissenting).
 

 [14]
 

 .
 
 Williams v. United States,
 
 289 U.S. 553, 53 S.Ct. 751, 77 L.Ed. 1372 (1933);
 
 Ex Parte Bakelite Corp.,
 
 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929).
 

 [15]
 

 . Additional support comes from
 
 Patton v. United States,
 
 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), which concerned the ability of a criminal defendant to waive an aspect of article III, right to trial by jury. The Court phrased the issue as follows:
 

 We come, then, to the critical inquiry: Is the effect of the constitutional provisions in respect of trial by jury to establish a tribunal as a part of the frame of government, or only to guaranty to the accused the right to such a trial?
 

 Id.
 
 at 293, 50 S.Ct. at 256.
 
 See also id.
 
 at 288, 50 S.Ct. at 254. This phrasing indicates that some article III rights do relate to the framework of government and may not be waived by the parties.
 
 See also id.
 
 at 294, 50 S.Ct. at 256 (quoting
 
 Low v. United States,
 
 169 F. 86, 92 (6th Cir.1909) (Lurton, J.)).
 

 [16]
 

 .
 
 See Jackson v. Ashton,
 
 33 U.S. (8 Pet.) 148, 149, 8 L.Ed. 898 (1834) (parties cannot waive lack of subject matter jurisdiction by consent);
 
 Mansfield, C. & L.M. Ry. Co. v. Swan,
 
 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884) (by estoppel);
 
 Mitchell v. Maurer,
 
 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934) (by failure to object).
 

 [17]
 

 . Magistrates’ salaries are set by the Judicial Conference and may not be reduced below the level at the beginning of a magistrate’s term in office. 28 U.S.C. §§ 633(c), 634(a), (b). This protection is only statutory and may be repealed by Congress at any time. This is, of course, true of the manner of appointment as well.
 

 [18]
 

 . According to figures provided by the Justice Department, federal magistrates terminated 262 jury and 563 nonjury trials with the consent of the parties in the year ending June 30,
 
 *1314
 
 1982. The magistrates also terminated 1627 consent cases without trial. Administrative Office of the United States Courts, Consent Cases Terminated by U.S. Magistrates — Year Ended June 30, 1982.
 

 [19]
 

 .
 
 United States v. Raddatz,
 
 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980);
 
 United States v. Jenkins,
 
 No. 82-1352, Slip op. at 3108-10 (9th Cir. June 28, 1983);
 
 Coolidge v. Schooner California,
 
 637 F.2d 1321 (9th Cir.),
 
 cert. denied,
 
 451 U.S. 1020, 101 S.Ct. 3011, 69 L.Ed.2d 392 (1981).