# MATHEWS, SECRETARY OF HEALTH, EDUCATION, AND WELFARE *v.* WEBER

No. 74–850.   Argued November 4, 1975—Decided January 14, 1976

BURGER, C. J., delivered the opinion of the Court, in which all Members joined, except STEVENS, J., who took no part in the consideration or decision of the case.

*Michael Kimmel* argued the cause for petitioner. With him on the brief were *Solicitor General Bork, Assistant Attorney General Lee, Deputy Solicitor General Friedman, Gerald P. Norton,* and *Morton Hollander.* On the reply brief was *Solicitor General Bork.*

*Peter D. Ehrenhaft,* by invitation of the Court, 421 U. S. 985, argued the cause and filed a brief as *amicus curiae* in support of the judgment below.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

The question presented in this case is whether the Federal Magistrates Act, 28 U. S. C. § 631 *et seq.,* permits a United States district court to refer all Social Security benefit cases to United States magistrates for preliminary review of the administrative record, oral argument, and preparation of a recommended decision as to whether the record contains substantial evidence to support the administrative determination—all subject to an independent decision, on the record, by the district judge who may, in his discretion, hear the whole matter anew.

(1)

Respondent Weber brought this action in the United States District Court for the Central District of California to challenge the final determination of the Secretary of Health, Education, and Welfare that he was not entitled to reimbursement under the Medicare provisions of the Social Security Act, as added, 79 Stat. 291, and amended, 42 U. S. C. § 1395 *et seq.,* for medical payments he made on behalf of his wife. Such a suit for judicial review is authorized by § 205 (g) of the Federal Magistrates Act, as added, 53 Stat. 1370, and amended, 42 U. S. C. § 405 (g), and governed by its standards. The court may consider only the pleadings and administrative record, and must accept the Secretary's findings of fact so long as they are supported by substantial evidence.

When respondent's complaint was filed, the Clerk of the court pursuant to court rule assigned the case to a named District Judge, and simultaneously referred it to a United States Magistrate with directions "to notice and conduct such factual hearings and legal argument as may be appropriate" and to "prepare a proposed written order or decision, together with proposed findings of fact and

conclusions of law where necessary or appropriate" for consideration by the District Judge. The Clerk took these steps pursuant to General Order No. 104–D of the District Court, which requires initial reference to a magistrate in seven categories of review of administrative cases,[1] including actions filed under 42 U. S. C. § 405 (g).

---

[1] General Order No. 104–D provides for reference in the following types of review of administrative cases:

"(A) Actions to review administrative determinations re entitlement to benefits under the Social Security Act and related statutes, including but not limited to actions filed under 42 U. S. C. § 405 (g).

"(B) Actions filed by the United States or a carrier to review, implement or restrain orders of the Interstate Commerce Commission re freight overcharges, including but not limited to actions under 28 U. S. C. § 1336 and 49 U. S. C. § 304a.

"(C) Actions, whether in the form of judicial review, habeas corpus or otherwise, for review of orders and other actions of the Immigration and Naturalization Service. Included, but not by way of limitation, are actions involving deportation orders, denial of preference classification visas and denial of petitions to adjust status.

"(D) Actions for review of adjudications by the Civil Service Commission, or the various departments or agencies, involving personnel actions such as wrongful discharge, reductions in force, transfers, retirements, etc.

"(E) Actions for review of an order of any branch or establishment of the military service denying discharge of petitioner from the military, whether such actions are brought in the form of petitions for judicial review, habeas corpus or actions for declaratory relief and injunction.

"(F) Actions filed pursuant to 18 U. S. C. § 923 (f) (3) to review administrative decisions denying applications for licenses to engage in business as a firearms or ammunition importer, manufacturer or dealer.

"(G) Actions to review administrative decisions by the Department of Labor denying applications for alien employment certification required pursuant to the provisions of 8 U. S. C. § 1182 (a) (14)."

The petition for certiorari raises only the issue of the propriety of the part of subsection (A) of the General Order that authorizes

The parties may object to the magistrate's recommendations. After acting on any objections the magistrate is to forward the entire file to the district judge to whom the case is assigned for decision; the district judge "will calendar the matter for oral argument before him if he deems it necessary or appropriate."

The Secretary moved to vacate the order of reference, arguing (1) that referral under a general order of this type violated Fed. Rule Civ. Proc. 53 (b) and (2) that such referral was not authorized by the Federal Magistrates Act. The Secretary also argued that the reference was of doubtful constitutionality and in contravention of the judicial review provisions of the Social Security Act, arguments that he has expressly declined to make in this Court. The District Court refused to vacate the order of reference, but certified the reference question for appeal under 28 U. S. C. § 1292 (b).

The Court of Appeals affirmed. 503 F. 2d 1049 (CA9 1974). That court stressed the limited and preliminary nature of the inquiry in review actions brought under 42 U. S. C. § 405 (g), the limited scope of the Magistrate's role on reference, and the fact that final authority for decision remained with the District Judge. "Were the broad provisions of General Order No. 104–D . . . before us, the Secretary might have grounds to complain. As applied, the rule is not vulnerable to the attack here mounted." 503 F. 2d, at 1051. The Court of Appeals thus reached a decision squarely in conflict with the decision of the Court of Appeals for the Sixth Circuit in *Ingram* v. *Richardson*, 471 F. 2d 1268 (1972). We granted certiorari, 420 U. S. 989 (1975),[2] and we affirm.

reference of cases brought under 42 U. S. C. § 405 (g), and we intimate no opinion on the validity of its other provisions.

[2] Because respondent has declined to appear, we invited an *amicus curiae* to support the decision of the Court of Appeals. 421 U. S. 985 (1975).

(2)

After several years of study, the Congress in 1968 enacted the Federal Magistrates Act, 28 U. S. C. § 631 *et seq.* The Act abolished the office of United States commissioner, and sought to "reform the first echelon of the Federal judiciary into an effective component of a modern scheme of justice by establishing a system of U. S. magistrates." S. Rep. No. 371, 90th Cong., 1st Sess., 8 (1967) (hereafter Senate Report). In order to improve the former system and to attract the most competent men and women to the office, the Act in essence made the position analogous to the career service, replacing the fee system of compensation with substantial salaries; the Act also gave both full- and part-time magistrates a definite term of office, and required that wherever possible the district courts appoint only members of the bar to serve as magistrates. Magistrates took over most of the duties of the commissioners, and the Act gave them new authority to try a broad range of misdemeanors with the consent of the parties.

Title 28 U. S. C. § 636 (b) outlines a procedure by which the district courts may call upon magistrates to perform other functions, in both civil and criminal cases. It provides:

> "Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court such additional duties as are not inconsistent with the Constitution and laws of the United States. The additional duties authorized by rule may include, but are not restricted to—

"(1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;

"(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

"(3) preliminary review of applications for post-trial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing."

The three examples § 636 (b) sets out are, as the statute itself states, not exclusive. The Senate sponsor of the legislation, Senator Tydings, testified in the House hearings:

"The Magistrate[s] Act specifies these three areas because they came up in our hearings and we thought they were areas in which the district courts might be able to benefit from the magistrate's services. We did not limit the courts to the areas mentioned. Nor did we require that they use the magistrates for additional functions at all.

"We hope and think that innovative, imaginative judges who want to clean up their caseload backlog will utilize the U. S. magistrates in these areas and perhaps even come up with new areas to increase the efficiency of their courts." Hearings on the Federal Magistrates Act before Subcommittee No. 4 of the House Committee on the Judiciary, 90th Cong., 2d Sess., 81 (1968) (hereafter House Hearings).

See also Hearings on the Federal Magistrates Act before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 89th

Cong., 2d Sess., and 90th Cong., 1st Sess., 14, 27 (1966 and 1967) (hereafter Senate Hearings).

Section 636 (b) was included to "permit . . . the U. S. district courts to assign magistrates, as officers of the courts, a variety of functions . . . presently performable only by the judges themselves." Senate Report 12. In enacting this section and in expanding the criminal jurisdiction conferred upon magistrates, Congress hoped by "increasing the scope of the responsibilities that can be discharged by that office, . . . to establish a system capable of increasing the overall efficiency of the Federal judiciary . . . ." *Id.*, at 11.

The Act grew from Congress' recognition that a multitude of new statutes and regulations had created an avalanche of additional work for the district courts which could be performed only by multiplying the number of judges or giving judges additional assistance. The Secretary argues that Congress intended the transfer to magistrates of simply the irksome, ministerial tasks; respondent [3] urges that Congress intended magistrates to take on a wide range of substantive judicial duties and advisory functions. We need not accept the characterization of the federal magistrate as either a "para-judge," as respondent would have it, or a "supernotary," as the Secretary argues, in order to resolve this case; finding the best analogy to this new office is not particularly important. Congress had a number of precedents for this new officer before it: British masters, justices of peace, and magistrates; our own traditional special masters in equity; and pretrial examiners.[4] The

---

[3] For convenience, the position taken by *amicus* in support of the Court of Appeals' judgment will be referred to as the position of respondent.

[4] The administration of the Act also profits from the British analogy. See Institute of Judicial Administration, Report of the

office Congress created drew on all prior experience. What is important is that the congressional anticipation is becoming a reality; in fiscal 1975, for example, the 500 full- or part-time United States magistrates disposed of 255,061 matters, most of which would otherwise have occupied district judges. These included 36,766 civil proceedings, 537 of which were Social Security review cases. Annual Report of the Director, Administrative Office of the United States Courts VIII–4 (1975). See also Sussman, The Fourth Tier in the Federal Judicial System: The United States Magistrate, 56 Chicago Bar Record 134 (1974); Geffen, Practice Before the United States Magistrate, 47 L. A. Bar Bull. 462 (1972); Doyle, Implementing the Federal Magistrates Act, 39 J. Kan. Bar Assn. 25 (1970).

Congress manifested concern as well as enthusiasm, however, in considering the Act. Several witnesses, including the Director of the Administrative Office and representatives of the Justice Department, expressed some fear that Congress might improperly delegate to magistrates duties reserved by the Constitution to Article III judges. Senate Hearings 107–128, 241n; House Hearings 123–128.[5] The hearings and committee

Committee to Study the Role of Masters in the English Judicial System (Federal Judicial Center 1974).

[5] Some courts have manifested a like concern. See *TPO, Inc.* v. *McMillen,* 460 F. 2d 348 (CA7 1972); *Reed* v. *Board of Election Comm'rs,* 459 F. 2d 121 (CA1 1972). But cf. *Palmore* v. *United States,* 411 U. S. 389 (1973). See also Note, Masters and Magistrates in the Federal Courts, 88 Harv. L. Rev. 779 (1975); Comment, An Adjudicative Role for Federal Magistrates in Civil Cases, 40 U. Chi. L. Rev. 584 (1973). Because we limit our consideration of the Act and General Order No. 104–D to the particular reference presented by this case, we need not deal with these broad constitutional issues. Petitioner expressly declines to rely on any constitutional argument.

reports indicate that in § 636 (b) Congress met this problem in two ways. First, Congress restricted the range of matters that may be referred to a magistrate to those where referral is "not inconsistent with the Constitution and laws of the United States . . . ." Second, Congress limited the magistrate's role in cases referred to him under § 636 (b). The Act's sponsors made it quite clear that the magistrate acts "under the supervision of the district judges" when he accepts a referral, and that authority for making final decisions remains at all times with the district judge. Senate Report 12. "[A] district judge would retain ultimate responsibility for decision making in every instance in which a magistrate might exercise additional duties jurisdiction." House Hearings 73 (testimony of Sen. Tydings). See also *id.*, at 127 (testimony of Asst. Deputy Atty. Gen. Finley).

(3)

We need not define the full reach of a magistrate's authority under the Act, or reach the broad provisions of General Order No. 104–D, in order to decide this case. Under the part of the order at issue the magistrates perform a limited function which falls well within the range of duties Congress empowered the district courts to assign to them. The magistrate is directed to conduct a preliminary review of a closed administrative record—closed because under § 205 (g) of the Social Security Act, 42 U. S. C. § 405 (g), neither party may put any additional evidence before the district court. The magistrate gives only a recommendation to the judge, and only on the single, narrow issue: is there in the record substantial evidence to support the Secretary's decision?[6] The magistrate may do no more than pro-

---

[6] Ordinarily, the parties will agree as to the legal standard, leaving as the sole issue whether the Secretary's determination is sup-

pose a recommendation, and neither § 636 (b) nor the General Order gives such recommendation presumptive weight. The district judge is free to follow it or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew. The authority—and the responsibility—to make an informed, final determination, we emphasize, remains with the judge.

The magistrate's limited role in this type of case nonetheless substantially assists the district judge in the performance of his judicial function, and benefits both him and the parties. A magistrate's review helps focus the court's attention on the relevant portions of what may be a voluminous record, from a point of view as neutral as that of an Article III judge. Review also helps the court move directly to those legal arguments made by the parties that find some support in the record. Finally, the magistrate's report puts before the district judge a preliminary evaluation of the cumulative effect of the evidence in the record, to which the parties may address argument, and in this way narrows the dispute. Each step of the process takes place with the full participation of the parties. They know precisely what recommendations the judge is receiving and may frame their arguments accordingly.

We conclude that in the context of this case the preliminary-review function assigned to the magistrate, and

ported by substantial evidence. In some cases, the magistrate may preliminarily resolve issues of law before making a recommendation; in some few cases, the recommendation may turn wholly upon an issue of law. The parties have not suggested that cases in either of these subcategories raise issues of statutory interpretation that require separate treatment, and we do not reach them on this record. Experience with the magistrate's role under the Act may well lead to the conclusion that sound judicial administration calls for sending directly to the district judge those cases that turn solely upon issues of law.

at issue here, is one of the "additional duties" that the statute contemplates magistrates are to perform.[7]

### (4)

The Secretary argues that the magistrate, in taking this reference, functions as a special master. From this premise, the Secretary asks us to hold that a general rule requiring automatic reference in a category of cases does not comply with the mandate of Fed. Rule Civ. Proc. 53 (b) that "reference to a master shall be the exception and not the rule," made in nonjury cases "only upon a showing that some exceptional condition requires it." He also argues that, for similar reasons, the reference here is

---

[7] Though we do not rely upon subsequently expressed congressional views, the Congress plainly considers claims such as respondent brought in the District Court as matters that could appropriately be referred for preliminary review to a magistrate. In considering magistrates' salaries in 1972, a Senate subcommittee noted:

"Magistrates are judicial officers of the Federal district courts. . . . They may also be authorized to screen prisoner petitions, hold pretrial conferences in civil and criminal cases, hear certain preliminary motions, *review social security appeals*, review Narcotics Addict Rehabilitation Act matters, and serve as special masters. In short, they render valuable assistance to the judges of the district courts, thereby freeing the time of those judges for the actual trial of cases." S. Rep. No. 92–1065, p. 3 (1972) (emphasis added).

The Administrative Office of the United States Courts, the statutory body that supervises the administrative aspects of the Act pursuant to 28 U. S. C. § 604 (d) (1), reads the Act in the same way. It has distributed a "checklist" of magistrate duties that includes review of Social Security appeals brought under 42 U. S. C. § 405 (g). Judicial Conference of the United States, Committee on the Administration of the Federal Magistrates System, Duties Which Might Be Assigned to U. S. Magistrates (Mar. 14, 1975). The Administrative Office first noted in its 1972 report that district courts were assigning Social Security appeals to magistrates under the 1968 Act. Administrative Office of the U. S. Courts, Annual Report of the Director VI–8 (1972).

not permissible under our decision in *La Buy* v. *Howes Leather Co.*, 352 U. S. 249 (1957).[8]

Section 636 (b) expressly provides that a district court may, in an appropriate case and in accordance with Fed. Rule Civ. Proc. 53, call upon a magistrate to act as a special master. But the statute also is clear that not every reference, for whatever purpose, is to be characterized as a reference to a special master. It treats references to the magistrate acting as master quite separately in subsection (1), indicating by its structure that other references are of a different sort. Moreover, Rule 53 (e) provides that, in nonjury cases referred to a master, the court shall accept any finding of fact that is not clearly erroneous. Under the reference in this case, however, the judge remains free to give the magistrate's recommendation whatever weight the judge decides it merits. It cannot be said, therefore, that the magistrate acts as a special master in the sense that either Rule 53 or the Federal Magistrates Act uses that term. The order of reference at issue does not constitute the magistrate a special master.

The Secretary argues that the magistrate will be a master in fact because the judge will accept automatically the recommendation made in every case. Nothing

---

[8] These arguments persuaded the Court of Appeals in *Ingram* v. *Richardson*, 471 F. 2d 1268 (CA6 1972). Other federal courts to consider the issue reached a contrary result. *Yascavage* v. *Weinberger*, 379 F. Supp. 1297 (MD Pa. 1974); *Bell* v. *Weinberger*, 378 F. Supp. 198 (ND Ga. 1974); *Murphy* v. *Weinberger* [Oct. 1966–Dec. 1974 Transfer Binder] CCH Unempl. Ins. Rep. ¶ 17,608 (Conn. 1974).

Several courts have relied upon these arguments to one extent or another in disapproving references that involved a broader grant of authority to the magistrate. See, *e. g.*, *Flowers* v. *Crouch-Walker Corp.*, 507 F. 2d 1378 (CA7 1974); *TPO, Inc.* v. *McMillen*, 460 F. 2d 348 (CA7 1972); *Reed* v. *Board of Election Comm'rs*, 459 F. 2d 121 (CA1 1972).

in the record or within the scope of permissible judicial notice supports this argument; nor does common observation of the performance of United States judges remotely lend the slightest credence to such an extravagant assertion. We express no opinion with respect to either the wisdom or the validity of automatic referral in other types of cases; only the narrow portion of General Order No. 104–D that led to reference of this particular case is before us today. In this narrow range of cases, reference promotes more focused, and so more careful, decisionmaking by the district judge. We categorically reject the suggestion that judges will accept, uncritically, recommendations of magistrates.

Our decision in *La Buy* v. *Howes Leather Co., supra,* does not call for a different result. In *La Buy,* the District Judge on his own motion referred to a special master two complex, protracted antitrust cases on the eve of trial. The cases had been pending before him for several years, he had heard pretrial motions, and he was familiar with the issues involved. The master, a member of the bar, was to hear and decide the entire case, subject to review by the District Judge under the "clearly erroneous" test. The judge cited the problems attendant to docket congestion to satisfy Rule 53's requirement that a reference to a special master be justified by "exceptional circumstances." The Court held that on these facts reference was not permissible and affirmed the Court of Appeals' supervisory prohibition.

*La Buy,* although nearly two decades past, is the most recent of our cases dealing with special masters, and our decision today does not erode it.[9] The Magistrate here acted in his capacity as magistrate, not as a spe-

---

[9] See generally Kaufman, Masters in the Federal Courts: Rule 53, 58 Col. L. Rev. 452 (1958); *CAB* v. *Carefree Travel, Inc.,* 513 F. 2d 375 (CA2 1975).

cial master, under a reference authorized by an Act passed 10 years after *La Buy* was decided. Other factors distinguish this case from *La Buy* as well. The issues here are as simple as they were complex in *La Buy*, and the District Judge had not yet invested any time in familiarizing himself with the case. The reference in this case will result in a recommendation that carries only such weight as its merit commands and the sound discretion of the judge warrants. We are persuaded that the important premises from which the *La Buy* decision proceeded are not threatened here.

Finally, our decision in *Wingo* v. *Wedding*, 418 U. S. 461 (1974), does not bear on this case. The Secretary has abandoned any claim that the statute giving the District Court jurisdiction of the case in the first instance, 42 U. S. C. § 405 (g), precludes reference to a magistrate. It was the Court's reading of the habeas corpus statute, 28 U. S. C. § 2243, that formed the basis for the holding in *Wingo* v. *Wedding*.

*Affirmed.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.