NORRIS, Circuit Judge,
dissenting:
We have before us the constitutionality of the Ninth Circuit’s Order Establishing *989 Appellate Review Procedures in Bankruptcy Cases. The Order was promulgated on December 28, 1982, in order to provide procedures for the appellate review of bankruptcy decisions in the wake of the Supreme Court’s decision in Northern Pipeline Construction Co. v. Marathon Pipe Dine Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In pertinent part, it provides:
The bankruptcy appellate panels shall consider and resolve all appeals in which the order or judgment to be reviewed has been entered by the bankruptcy judge before the filing of judgment in Marathon.
The bankruptcy appellate panels shall not consider and resolve any appeals in which the order of judgment to be reviewed is entered by the bankruptcy judge after the filing of judgment in Marathon.
Appellants contend that in providing for continued bankruptcy appellate panel (BAP) jurisdiction over appeals from bankruptcy opinions entered prior to the filing of judgment in Marathon, the Order violates the constitutional principles set forth in Marathon and preceding Supreme Court cases.
The majority rejects appellants’ claim because, while the BAP’s perform judicial functions, article III judges “retain the ‘essential attributes of the judicial power.’ ” Supra at 985 (quoting Marathon, 458 U.S. at 80-81, 102 S.Ct. at 2876-2877). The majority bases this contention on the Supreme Court’s decision in United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), which upheld a provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B), permitting a district court to refer to a magistrate a motion to suppress evidence. The majority argues that “the relationship between the BAP and the court of appeals is functionally equivalent to the relationship betweqn a magistrate and a district judge” — a relationship which, according to the decision in Raddatz, left the “essential attributes of the judicial power” in article III hands. Supra at 985. In the majority’s view, the relationship between the BAP and the court of appeals is “functionally equivalent” to the relationship between a magistrate and a district judge for two reasons. First and foremost, just as a district judge is required to review independently the decisions of a magistrate, see Raddatz, 447 U.S. at 682, 100 S.Ct. at 2415, the court of appeals reviews the decisions of the BAP’s under what is, in effect, a de novo standard. Supra at 986. Second, according to the majority, the circuit council’s power to determine whether or not to establish BAP’s, see 28 U.S.C. § 160, is analogous to the district court’s authority to decide whether or not to refer a particular case to a magistrate, see Raddatz, 447 U.S. at 681, 100 S.Ct. at 2415. On the basis of these supposed similarities, the majority concludes that “the continued functioning of the BAP is consistent with article III.” Supra at 987. I must disagree.
I
Whatever the merits of the majority’s analogy to Raddatz, it does not save the Ninth Circuit Order from unconstitutionality for the analogy is inapplicable to two large categories of decisions handed down by the BAP’s: decisions not appealed to the court of appeals and decisions concerning interlocutory orders issued by the bankruptcy court. As the majority correctly indicates, the cornerstone of the Raddatz decision is the requirement that the district court subject the magistrate’s proposed findings and recommendations to de novo review before entering a final order. It was on the basis of this requirement that the Supreme Court found that “ ‘[t]he authority — and the responsibility — to make an informed, final determination ... remains with the judge,’” Raddatz, 447 U.S. at 682, 100 S.Ct. at 2415 (quoting Mathews v. Weber, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976)), and held that the Magistrates. Act meets article III standards. Id. 447 U.S. at 683, 100 S.Ct. at 2416. Decisions not appealed to the court of appeals and decisions concerning interlocuto *990 ry orders, however, are not subject to de novo review, or any other form of review, in the court of appeals. Consequently, these types of decisions fall outside of the majority’s Raddatz analysis.
Thus, before it can be concluded that “the continued functioning of the BAP is consistent with article III,” these two classes of cases must be subjected to separate article III scrutiny.[1] The majority fails to undertake such an inquiry.[2] My own analysis indicates that article III standards are not met.
II
In scrutinizing these two classes of cases, we should be guided by the Ninth Circuit’s recent decision in Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc., 725 F.2d 537 (9th Cir.1984) (en banc). In Pacemaker, an en banc panel of this court elaborated on the requirements of article III. The panel noted that article III has two components: an individual rights component concerned with the litigants’ right to an independent and unbiased judge, and an institutional component designed to ensure the separation and independence of the judiciary. Both components, the panel stated, must be satisfied if the requirements of article III are to be met. Id. at 541. Thus, to pass constitutional muster, the BAP’s authority to review cases not thereafter appealed to the court of appeals and to review interlocutory orders must offend neither of these article III values.
A
I turn first to consideration of BAP decisions which are not appealed to the circuit court. As the majority notes, where the “essential attributes of the judicial power” are retained by article III judges, the requirements of article III — both individual rights and institutional — are satisfied.[3] Thus, in United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the Supreme Court upheld the reference of a motion to a magistrate even though the moving party had opposed the reference. The Court held that because “ ‘[t]he authority — and the responsibility— to make an informed, final determination ... remain[ed] with the judge,’ ” id. at 682, 100 S.Ct. at 2415 (quoting Mathews v. Weber, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976)), the reference was constitutionally permissible.
*991 In determining whether the essential attributes of judicial power remain in article III hands, courts generally have looked to two forms of article III oversight: direct control over or review of the individual case and broader administrative control over the system of non-article III adjudication. Thus, in upholding 28 U.S.C. § 636(c), the Pacemaker court relied on the district court’s power to cancel a reference to a magistrate and the judicial conference’s power to select and remove magistrates. 725 F.2d at 546. See also United States v. Raddatz, 447 U.S. 667, 684-86, 100 S.Ct. 2406, 2416-18, 65 L.Ed.2d 424 (1980) (Blackmun, J., concurring).
Insofar as BAP decisions that are not appealed are concerned, there is, of course, no direct article III control over or review of the individual case. In this respect, the BAP system- contrasts sharply with the statutes considered in Raddatz and Pacemaker. As already noted, in Raddatz, the statute in question required that an article III judge make a de novo review of the magistrate’s proposed findings and recommendations before entering an order. 447 U.S. at 681-82, 100 S.Ct. at 2415-16. In Pacemaker, the provision before the court did not require de novo review, but it did permit an article III judge to revoke the reference to a magistrate at any time. 725 F.2d at 545. Here article III review is neither required nor permitted. If no appeal is taken, the BAP decision is shielded entirely from direct article III scrutiny.
This absence of direct article III scrutiny raises serious individual rights and institutional concerns. First, the individual litigant is permanently subject to the unreviewed judgment of a non-article III court. Second, in Pacemaker, we stated that “[i]f the essential, constitutional role of the judiciary is to be maintained, there must be both the appearance and the reality of control by article III judges over the interpretation, declaration, and application of federal law.” Id. at 544. See also Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 86 n. 39, 102 S.Ct. 2858, 2879 n. 39, 73 L.Ed.2d 598 (1982). Here there is neither the appearance nor the reality of article III control. When neither of the parties to a case takes an appeal to the circuit court, legal precedent, binding on bankruptcy judges, is created by the unreviewable decision of non-article III judges.[4]
I seriously doubt that any system of administrative control — no matter how extensive — could alleviate these article III concerns. I believe that where, as here, there is a complete absence of direct article III scrutiny over the individual case, even thé most extraordinary system of administrative controls is insufficient to satisfy the requirements of article III. To my knowledge, no federal court has ever held that administrative controls alone can satisfy article III. In both Raddatz and Pacemaker, for example, article III values were protected by administrative controls and direct supervision of individual cases. Moreover, it is difficult to see how any system of administrative control alone could ever adequately safeguard the individual rights and institutional values underlying article III. Such a system might, via the threat of sanctions or removal, discourage non-article III tribunals from making biased rulings. It could not ensure, however, that such decisions never would be made. And, in the absence of direct article III supervision of the individual case, when a biased decision was handed down there would be no mechanism for correcting the decision and vindicating article III values. The judicial conference might sanction or remove the offending judge, but both litigants and inferior judges would be bound by the decision in question.
But even if I were to conclude that some extraordinary system of administrative controls might adequately compensate for this complete absence of direct scrutiny over individual cases, the administrative *992 controls provided for in the Bankruptcy Act are clearly inadequate. As the majority notes, supra at 986, the circuit council decides whether or not to establish BAP’s. 28 U.S.C. § 160(a). In addition, the chief judge of the circuit designates the members of the particular panels, id., and the circuit council has the authority to remove bankruptcy judges for incompetence, misconduct, neglect, or physical or mental disability, 28 U.S.C. § 153.
The majority makes much of the first of these administrative protections — the circuit council’s power to decide whether or not to establish BAP’s. It analogizes this power to the district court’s authority, under the Magistrates Act, to decide whether or not to refer cases to magistrates. Supra at 986. The comparison is far from apt, however. As we recently noted in Pacemaker, 725 F.2d at 545, the power to make and revoke references gives the district court the flexibility to consider the advisability of non-article III adjudication “in individual cases.” Where — because a political branch of government is involved or because a substantial constitutional question is presented — it is more appropriate that an article III tribunal adjudicate the case, the district court has the freedom to retain direct control over the case. The BAP system, in contrast, permits no such flexibility. The circuit council is presented with a flat choice between having BAP’s and not having BAP’s. If a sensitive case arises after the BAP’s have been created, the council has no recourse other than the total abolition of the system — a radical measure unlikely to be employed. Thus, the circuit council’s power to create or abolish the BAP’s offers little in the way of article III protection.
In sum, insofar as BAP decisions not appealed to the court of appeals are concerned, the BAP system does not meet article III standards. The “essentials of the judicial power” do not remain in article III hands. There is no direct article III control over individual cases, and the administrative supervision provided for in the Bankruptcy Act is insufficient to protect the values underlying article III.
B
BAP decisions concerning interlocutory orders present essentially the same problems. Article III supervision over such decisions is as inadequate as article III supervision over cases not appealed to the circuit court. As the majority notes, supra at 986, decisions concerning interlocutory orders are not appealable to the circuit court. In re Rubin, 693 F.2d 73, 76-77 (9th Cir.1982). Thus, there is no direct control over or review of the individual decision by article III judges. And, as already noted, the administrative controls provided for in the Bankruptcy Act are insufficient to meet article III requirements.
The majority argues, however, that the absence of article III supervision is of no constitutional significance. First, the majority states that “[t]he court of appeals retains sufficient control over the BAP’s, notwithstanding the court’s inability to hear interlocutory appeals.” Supra at 986. The precise meaning of this statement is obscure. But whatever its meaning it is incorrect. If the majority intends to claim that despite the absence of article III review of interlocutory appeals, the court of appeals retains sufficient control over the BAP’s resolution of interlocutory appeals, the control which the majority finds sufficient is nothing more than the clearly inadequate administrative controls I have already discussed. If the majority intends to argue that despite the absence of article III review of interlocutory appeals, the court of appeals retains sufficient control over the BAP’s resolution of cases generally, the majority is advancing the novel proposition that article III is satisfied even when “the essential attributes of the judicial power” are not retained by article III judges in all cases. To my knowledge, no federal court has ever before made such a claim.
Second, the majority states that “[bjecause there is no constitutional right to an appeal ... a fortiori there is no *993 constitutional right ... to immediate review of interlocutory decisions by an article III judge.” Supra at 987. The majority’s contention appears to be that since BAP review of interlocutory orders is not constitutionally compelled, it is not necessary to satisfy article III standards if such review is provided.
This argument ignores well-established constitutional doctrine. It is, in essence, an application of the right-privilege distinction to the field of appellate review. Since there is no right to appellate review, the government may provide any form of appellate review it deems appropriate. The right-privilege distinction has long been discredited, however. See, e.g., Sherbert v. Verner, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963); Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968). In fact, the Supreme Court has implicitly rejected the right-privilege distinction in precisely this context. In Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Court struck down the jurisdiction of the bankruptcy courts under 28 U.S.C. § 1471 despite the fact that there was no “right” to have a bankruptcy court or, for that matter, any federal forum adjudicate the state law claims there in issue.
In considering the merit of the majority’s argument, it is important to remember that the Constitution compels very little in the way of federal original or appellate jurisdiction. Thus, acceptance of the majority’s right-privilege analysis would completely eviscerate article III.[5]
In short, BAP review of interlocutory orders, like BAP resolution of cases not appealed thereafter to the circuit court, offends article III standards.
Ill
In conclusion, the Supreme Court has repeatedly stated that “our Constitution unambiguously enunciates a fundamental principle — that the ‘judicial Power of the United States’ must be reposed in an independent Judiciary. It commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence.” Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 60, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982). See also United States v. Will, 449 U.S. 200, 217-18, 101 S.Ct. 471, 481-482, 66 L.Ed.2d 392 (1980). Today’s majority opinion fails to accord sufficient weight to this “fundamental principle” and, in the process, comes perilously close to emasculating the requirements of article III of the Constitution.
The majority relies on an article III anal- ’ ysis which is entirely inapplicable to two substantial classes of cases decided by BAP’s. When BAP review of these cases is subjected to separate article III scrutiny, it becomes clear that BAP jurisdiction offends both the individual rights and institutional components of article III. Because the Ninth Circuit Order Establishing Appellate Review Procedures in Bankruptcy grants the BAP’s jurisdiction over these cases and because this grant is not readily severable from the Order’s remaining grant of jurisdiction, the Order should be struck down. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87-88 n. 40, 102 S.Ct. 2858, 2880 n. 40, 73 L.Ed.2d 598; id. at 91-92, 102 S.Ct. at 2881-2882 (Rehnquist, J., with whom O’Connor, J., joins, concurring in the judgment). By failing to do so, the majority ignores the clear dictates of article III. Consequently, I dissent.

. This case does not fall within either of these categories. But because the Ninth Circuit Order’s grant of jurisdiction over cases not appealed to the court of appeals and over decisions concerning interlocutory orders is not severable from the rest of the grant, see infra at 993, the constitutionality of the entire Order stands or falls on the constitutionality of BAP jurisdiction over those cases.

. The majority does concede that its analogy to the magistrate-district court relationship is "not a perfect one.” Supra slip op. at 2917, at 986. It notes that there is no article III review of BAP decisions reviewing interlocutory orders. But the majority’s discussion of this fact is brief and, as indicated below, infra at 986, inadequate. Moreover, the majority completely ignores the fact that many BAP decisions are never appealed to the court of appeals and thus receive no article III scrutiny.

. In Pacemaker, we held that the individual rights component of article III can also be satisfied by consent to the jurisdiction of a non-article III tribunal. 725 F.2d at 542. In Pacemaker, however, we made it clear that to be effective a waiver must be unforced. Id. at 543. See also 28 U.S.C. § 636(c)(2). Here, consent, if it exists, is neither free nor voluntary. Here, in contrast to Pacemaker, the litigant must endure two non-article III adjudications — one before the bankruptcy court and another before the BAP — and the concomitant costs and delay before he even has the option of choosing an article III adjudication. By the time he obtains this option, he may no longer be able to afford- — either in terms of money or time — continued litigation. Even if I were to conclude that there was free and voluntary consent in these cases, however, it would not alter my analysis. In Pacemaker, we stated that "[sjtatutes or governmental actions which violate the separation of powers doctrine in its systemic aspect should be invalidated, as a general rule, despite waiver by affected private parties." Id. at 544. Because I conclude that BAP resolution of cases which are not appealed subsequently to the court of appeals ”violate[s] the separation of powers doctrine in its systemic aspect,” see infra, the presence or absence of consent is irrelevant.

. In this respect, the BAP system poses a far more significant threat to article III institutional values than the systems under consideration in Raddatz and Pacemaker. In those cases, the decision of the non-article III tribunal had no precedential effect. Here, that is not the case.

. It appears that even the majority does not recognize the full import of its argument, for if one accepts the majority’s position, it completely disposes of the case. To my knowledge, there is no right to appellate review of any bankruptcy court decision. Thus, according to the majority’s line of reasoning, article III requirements are inapplicable to all BAP adjudications.