**Victor W. KAY, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 6:86–2695–1J.**

United States District Court,
D. South Carolina,
Greenville Division.

April 4, 1988.

---

Will T. Dunn, Jr., Greenville, S.C., for plaintiff.

J.D. McCoy, III, Asst. U.S. Atty., Greenville, S.C., for defendant.

HAWKINS, District Judge.

This action to obtain judicial review of a final decision of the Secretary of Health and Human Services pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), is before this court upon the Magistrate's recommendation that the Secretary's decision be reversed. The record includes a report and recommendtion of the United States Magistrate made in accordance with this court's order of reference and 28 U.S.C. § 636(b)(1)(B).

Under 28 U.S.C. § 636(b),

[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

Absent timely objection from a dissatisfied party, however, it does not appear that Congress intended to require a district court to review, under a *de novo* or any other standard, a Magistrate's factual or legal conclusions. *Thomas v. Arn,* 474 U.S. 140, 149–150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986). Nevertheless, the authority, as well as the responsibility, to make an informed, final determination remains with the judge. *Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976).

In the present case, the Secretary has filed objections to the Magistrate's report. In essence, the Secretary objects to the Magistrate's application and use of the "relation back" doctrine in light of the complete absence of any objective medical evidence of a mental impairment prior to May 27, 1985. A review of the report and recommendation, the Secretary's objections and the applicable law indicate that the Magistrate's report should not be adopted and the Secretary's decision should be affirmed.

The medical evidence of record indicates that in October of 1977 plaintiff suffered a shotgun wound to the chest and abdomen. After undergoing "exploratory laparotomy, hemostasis and drainage of liver wound, suture of diaphragm, right thoracotomy, and partial resection of right middle lobe and right lower lobe, (Tr. 153) and being hospitalized for approximately 2 weeks, plaintiff was released from the Greenville Hospital in good condition.

Several years later, in February 1983, plaintiff was involved in an altercation with his daughter's boyfriend resulting in fairly severe facial injuries and cardiac arrhythmia. (Tr. 208). Final diagnosis was "cardiac arrhythmia" and "left trimalar and orbital blow-out facial fractures with open lacerations." (Tr. 208).

Subsequently, in late 1984 it was diagnosed that plaintiff suffered from "pre-malignant actinic keratosis near hairline and squamous cell carcinoma on lip." (Tr. 257). Plaintiff underwent excision of the squamous cell carcinoma (Tr. 259) with favorable results.

On January 17, 1985, plaintiff underwent a disability examination performed by Dr. Dennis Anderson. Examination revealed a well-developed, well-nourished white male who was in no acute distress. Plaintiff was somewhat hostile but alert, oriented and cooperative. Dr. Anderson opined that plaintiff was capable of managing his own funds. (Tr. 226).

It is noted that plaintiff did not complain to Dr. Anderson of any symptoms that would indicate emotional distress or depression.

In April of 1985 plaintiff was diagnosed as suffering from chronic obstructive pulmonary disease. Shortly thereafter, plaintiff was seen by Dr. Martha R. Westrope, Clinical Psychologist, upon referral from his attorney. Dr. Westrope administered the following tests: Wechsler Adult Intelligence Scale–Revised; Bender–Gestalt; Draw–A–Person; WRAT–R2; Rorschach; and MMPI." (Tr. 280). Based upon the above-cited tests, Dr. Westrope determined that plaintiff is suffering from a significant degree of psychic distress including depression and apprehensiveness concerning his physical state. (Tr. 283).

The test data gives at least an indication of mild cerebral dysfunctioning though the extent is difficult to determine as other factors are interferring which obscure the degree of impairment. Of significance however, is his psychic distress and the fact his intellectual or cognitive functioning tend to rapidly loosen or become less efficient as he continues with such activities. The extent to which his medical or health problems are also debilitating needs determination by a physician. The claimant would be able to handle funds in his own best interest.

A second psychiatric evaluation was performed, at the request of plaintiff's attorney, by Dr. Patrick B. Mullen. After speaking with plaintiff and requesting the test results of Dr. Westrope, Dr. Mullen diagnosed plaintiff as suffering from the following:

Axis 1—Post Traumatic Stress Disorder
Generalized Anxiety Disorder
Dysthymic Disorder
Situational Adjustment Reaction.
Axis 2—No diagnosis.
Axis 3—Chronic Obstructive Pulmonary Disease
StuatPost Pulmonary Lobectomy due to Traumatic Injury.

Dr. Mullen concluded by stating that he thinks plaintiff is disabled to work, but capable of handling his funds in his own best interest.

A year following, both Drs. Westrope and Mullen amended their reports to opine that plaintiff began suffering from Post Traumatic Stress Syndrome in January of 1983. (Tr. 315–16).

A claimant for disability benefits bears the burden of proving a disability, 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a) (1985), which is defined by statute as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A).

It is well established that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence has been defined as evidence which a reasonable mind would accept as sufficient to support a particular conclusion

and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966).

In the case at bar, there is evidence to suggest the possibility that plaintiff was mentally impaired as of January 1983. That is, the addendum to the psychological reports of Drs. Westrope and Mullen, which came a year after the reports were written, suggest that plaintiff began suffering from Traumatic Stress Syndrome as of January 1983. There are no entries in plaintiff's medical records that indicate or exhibit that plaintiff had signs or symptoms of mental illness prior to May 1985. Furthermore, neither Dr. Westrope nor Dr. Mullen are treating physicians. To the contrary, the record indicates that Dr. Westrope and Dr. Mullen merely examined plaintiff on one occasion. Thus, their opinions are not entitled to great weight nor can they in and of themselves form substantial evidence. *See Mitchell v. Schweiker,* 699 F.2d 185 (4th Cir.1983).

■ Other than the opinion of the two non-treating psychologists, there is no evidence that would suggest plaintiff suffered from a mental impairment as of January 1983. There are no entries in plaintiff's medical records that indicate or exhibit that plaintiff had signs or symptoms of mental illness prior to May 1985. None of plaintiff's treating physicians report plaintiff as suffering from mental illness. There exists nothing in the record prior to April 1985 that would show that plaintiff began manifesting symptoms of mental illness prior to that date.

Here, the court is faced with a situation where there exist two doctors' opinions that an illness related back to a specific time but with no objective or subjective medical evidence to support those conclusions. More importantly, there is a complete lack of evidence which would establish that the plaintiff became disabled due to mental illness as of January 1983. Certainly, under these circumstances, a reasonable mind could conclude that plaintiff did not become disabled until May of 1985.

There being evidence on both sides, this court must apply the rule of law that requires it to uphold the Secretary's decision if it is based upon substantial evidence. A review of the evidence leads this court to the inescapable conclusion that there is substantial evidence to support the Secretary's decision.

Furthermore, this court is of the opinon that the Magistrate's reliance on the relation back doctrine set forth in *Prater v. Harris,* 620 F.2d 1074 (4th Cir.1980), is misplaced. The issue in *Prater* is whether an individual is entitled to recover black lung benefits. Such is definitely not the case here.

The concept of relation back has been employed most frequently in the black lung context. The concept was created to permit the introduction of evidence relating to pneumoconiosis which came into being subsequent to June 30, 1973, to establish the onset of the disability prior to July 1, 1973. In applying the relation back doctrine it is presumed that pneumoconiosis is a degenerative disease. We do not know here that Traumatic Stress Syndrome is necessarily progressive. Additionally, the relation back concept is generally used to fill in gaps in the evidence. There is no medical evidence in this case that existed in January 1983 which could be used to link plaintiff's mental illness back to January 1983. Thus, as stated earlier, the application of the relation back concept was misplaced.

Accordingly, it is

ORDERED, that the Secretary's decision awarding benefits as of May 27, 1985, be, and the same is hereby, affirmed.

AND IT IS SO ORDERED.