**NATIONAL EXCESS INSURANCE COMPANY, a California corporation, Plaintiff,**

v.

**CIVEROLO, HANSEN & WOLF, P.A., a New Mexico professional corporation and W.R. Logan, Defendants.**

**No. CIV 89–1079 JC.**

United States District Court, D. New Mexico.

Sept. 27, 1991.

· Richard W. Hughes, Rothstein, Bennett, Donatelli, Hughes & Dahlstrom, Santa Fe, N.M., for plaintiff.

William S. Dixon, Charles K. Purcell, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

CONWAY, District Judge.

THIS MATTER comes on for consideration of plaintiff's Objection to Magistrate Judge's Order of July 1, 1991, filed on July 15, 1991. The Court, having reviewed the memoranda of the parties, and being otherwise fully advised in the premises, finds that the objection is not well-taken and will be denied.

This is the last of seven objections to the Magistrate Judge's orders filed by the parties to this lawsuit between April 14, 1991 and July 15, 1991. The Court disposed of three of these objections at a hearing on August 5, 1991, at which time this motion had not yet been fully briefed; the other three motions are disposed of today in a separate memorandum opinion and order. It is hardly surprising that the contentiousness and rigidity displayed by the parties in their briefs and at that hearing should culminate in an appeal from a finding of contempt.

### I.

In 1968 Congress enacted the Federal Magistrates Act. *See* Fed.R.Civ.Proc. 72(a). Under the Act, magistrate judges may be designated to rule on non-dispositive and even some dispositive issues before trial.

The Act grew from Congress' recognition that a multitude of new statutes and regulations had created an avalanche of additional work for the district courts which could be performed only by multiplying the number of judges or giving judges additional assistance.

*Matthews v. Weber*, 423 U.S. 261, 268, 96 S.Ct. 549, 553, 46 L.Ed.2d 483 (1976). Since 1968, the Act has been amended three times (in 1976, 1979, and 1983)[1]; each amendment has enlarged the scope of the magistrate judges' responsibilities. *See* 12 C. Wright, A. Miller and F. Elliot, *Federal Practice & Procedure* § 3076.1 (1991 Pocket Part at 34).

Under Rule 72(a) of the Federal Rules of Civil Procedure the Court "shall consider objections made by the parties ... and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ.Pro. 72(a). "The clearly erroneous standard is intended to give the magistrate a free hand in managing discovery issues." R. Marcus & E. Sherman, *Complex Litigation* at 643 (1985). The Seventh Circuit has stated that "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988).

### II.

On April 4, 1991, the Magistrate Judge ordered the plaintiff to produce 15 documents which, citing attorney-client privilege, the plaintiff had refused to produce. The plaintiff was given twenty days to fully comply with the Order. The Order stated that "[t]his Order is not stayed pending an appeal." As is obvious from the quoted language, the Magistrate Judge clearly and unequivocally indicated that a Rule 72(a) objection by either party would not stay effect of the Order.

The plaintiff responded to this Order by filing an Objection to the Order and a Motion to Stay with this Court on April 18,

---

**1.** On April 30, 1991, the United States Supreme Court approved a fourth amendment to Rule 72(a). Barring congressional opposition, this amendment will be effective as of December 1, 1991.

1991. Notably, the plaintiff did not file a motion to reconsider with the Magistrate Judge, nor did the plaintiff seek a stay of the Order from the Magistrate Judge himself. The plaintiff did not comply with the Order. On May 3, 1991, the plaintiff responded in writing to the defendants' request for compliance:

> With respect to your contention that we should have no problem in producing the 15 ... communications as to which we asserted attorney/client privilege, you are apparently unaware that we have filed objections to that portion of the court's orders, and have additionally moved for a stay of that portion of the order. Although there has not yet been a ruling on our motion for stay, *we are certainly not inclined to voluntarily produce those documents while the motion is pending.*

Defendants' Exhibit A (emphasis added). There is some irony in the plaintiff's statement that it would not "voluntarily" produce the documents—obviously, the time for voluntary production was long past; subsequent to the April 4, 1991 Order, production was *compelled* pursuant to the Magistrate Judge's ruling. The plaintiff, apparently awaiting the arrival at its office of a United States Marshall authorized to force compliance with the Order, refused to produce the documents subject to the Order. Instead, National Excess claimed—contrary to the express language of the Magistrate Judge's Order—that its Rule 72(a) objection justified this position.

Confronted with the plaintiff's intransigence, the defendants filed a Motion to Compel Compliance With Magistrate Judge's Order of April 4, 1991. On June 6, 1991, the Magistrate Judge ruled that the plaintiff was in contempt and ordered it to pay defendants' attorneys fees and costs for the second motion.

■ According to the plaintiff, the issue presented by this objection ... is whether or not, having filed a timely Objection to and a Motion for Stay of the Magistrate's Order to produce documents as to which a proper attorney/client privilege was asserted, Plaintiff should have been found in contempt, and sanctioned because it thereafter refused to produce the documents pending a ruling on its motion or objection.

Memorandum in Support of Objection to Magistrate Judge's Order of July 1, 1991 at 3–4. With one minor exception (the use of the word "proper" before "attorney/client" in the second sentence) the Court agrees with plaintiff that this is indeed the issue to be decided. The Court reviews the issue under the clearly erroneous or contrary to law standard set forth above.

■ There is no overstating the importance attached to the obligation of citizens to obey court orders. There are no legions of armies marshalled on behalf of state and federal courts to ensure that judicial orders are obeyed. One hallmark of a civilized society is the degree to which it is governed by the rule of law. Yet the degree to which this society achieves that lofty ambition depends in large measure upon the uncoerced compliance of its citizens to the specific orders directed to them by the judiciary. A society composed primarily of individuals who relent to such commands only at the barrel of a gun is one in which the rights protected by the rule of law have been emptied of substance. Thus it is that individuals who violate even those court orders later found to be in error risk being held in contempt of court. In *Walker v. Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the United States Supreme Court upheld a contempt citation stemming from Walker's violation of an unconstitutional order limiting his first amendment rights. The Court concluded that "respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." *Id.* at 321, 87 S.Ct. at 1832.

Against these weighty considerations, and in support of its objection, the plaintiff proffers *Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). In *Maness,* then Chief Justice Burger ruled that *an attorney* is not subject to the penalty of contempt for advising his client to refuse on Fifth Amendment grounds to

produce material demanded by a subpoena when the lawyer believes in good faith that the material may tend to incriminate his client. Nothing in *Maness* mitigates the concerns discussed above nor undermines the general rule that a *party's* refusal to obey even an erroneous court order constitutes contempt of court. Indeed, the opinion carefully distinguished that situation:

> There is a crucial distinction between citing a recalcitrant witness for contempt and citing the witness' lawyer for contempt based only on advice given in good faith to assert the privilege against self-incrimination.

*Id.* at 467, 95 S.Ct. at 595. Thus *Maness* provides no support for the plaintiff's objection.

Finally, the plaintiff contends that citations of civil contempt should be vacated when the orders on which they are based are reversed, citing only three cases, all of which come from outside of this circuit. Even if the Court were to adopt this rule, it would have little effect on the outcome here. Following an *in camera* inspection of the documents at issue, the Magistrate Judge modified his Order of April 4, compelling production of only six of the documents. By a separate memorandum opinion and order, this Court has affirmed each of the Magistrate Judge's decisions concerning these documents. The result of this Order is that the Magistrate Judge's ultimate ruling is left undisturbed. Nevertheless, the ultimate modification to the Magistrate Judge's original Order does not constitute a determination by this Court that that decision was in error. To the contrary, the Court has stated specifically that the Magistrate Judge's April 4, 1991 Order was neither clearly erroneous nor contrary to law. Finally, even the ultimate resolution of this dispute requires the plaintiff to produce six of the documents subject to the Magistrate Judge's original Order. Thus, the plaintiff's position has not been vindicated by these numerous objections.

## III.

If this Court's docket is at all representative of trends throughout the District, then it appears that objections such as the one now before this Court are becoming commonplace. And so is launched a new era in what some have characterized as an age of dilatory litigation tactics. Parties are, of course, entitled to bring their objections to a magistrate judge's orders before this Court, and—when properly presented—this Court will give such objections the careful consideration that they merit. Nevertheless, in reaching its decision to appeal a magistrate judge's ruling, a party is well advised to consider the applicable standard of review together with Congress's reasons for passing the Act.

The "avalanche of additional work" about which the Supreme Court wrote in *Matthews v. Weber, supra,* 423 U.S. at 268, 96 S.Ct. at 553 (1976), has by no means abated during the past 15 years. The average time between the filing of a civil complaint and disposition at trial continues to increase. Discovery matters have been delegated to the magistrate judges in order to promote judicial efficiency and the speedy resolution of pre-trial disputes which might interfere with an orderly discovery process. Ill-considered "strategic" objections to a magistrate judge's orders threaten to undermine these goals and do a disservice to the parties, who presumably are themselves primarily interested in a speedy resolution of their disputes.

In light of these considerations, the question now before the Court is simple. Given the law and facts discussed above, and indulging every doubt in favor of the plaintiff, can this Court say under any circumstances that the Magistrate Judge's Order of July 1, 1991 is clearly erroneous or contrary to law? The answer is patently obvious—and should have been so to the plaintiff before it filed this objection. The plaintiff willfully disobeyed an order made on behalf of this Court by the Magistrate Judge. It put the parties and the Court to extra expense. These tactics delayed the production of six discoverable documents for more than one and one half years—in defiance of two Magistrate Judge's orders. The contempt citation will stand.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that plaintiff's Objection to Magistrate Judge's Order of July 1, 1991 be, and hereby is, denied.