Michael ARNOLD, et al., Plaintiffs

v.

CITY OF YORK and Michael R. Hill, Police Chief of the City of York Police Department, Defendants.

No. 4:CV–03–1352.

United States District Court, M.D. Pennsylvania.

Sept. 1, 2004.

Neil J. Rovner, Angino & Rovner, Harrisburg, PA, for Plaintiffs.

Donald B. Hoyt, Assistant City Solicitor, York, PA, for Defendants.

## MEMORANDUM AND ORDER

JONES, District Judge.

Pending before this Court is the Motion to Dismiss of Defendants, City of York ("City"), and Michael R. Hill, Chief of the York Police Department. We have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and have reviewed the submissions of the parties. For the reasons discussed below, we will deny Defendants' Motion.

## BACKGROUND

Michael Arnold and Linda Julius ("Plaintiffs") initiated this action on August 11, 2003 on behalf of their deceased son, Christopher Arnold ("Arnold" or "Decedent"). At issue in this case are the events of August 12, 2002 that resulted in Arnold's death. At the time of his death, Arnold was 29 years old and had been suffering from long-term schizophrenia. Plaintiffs allege that shortly before August 12, 2002, Arnold, through no fault of his own, was unable to take his medication for his schizophrenia and thus was his mental condition rendered him agitated, paranoid, and hallucinatory. Thereafter, on August 12, 2002, Arnold was observed wandering the streets of York in a delusional state. A woman who witnessed Arnold talking to himself called the York Police Department to report him. The Department classified the call as a "code 96," or person with mental illness, and dispatched officers to the area.

The police searched the neighborhood and were told by neighbors where Arnold lived. A police officer and chaplin who was riding along arrived at Arnold's apartment at approximately 12:15 a.m. They heard Arnold talking to himself inside and called for back-up. When officers called to Arnold to exit his apartment, he jumped through a porch window and fled.

Plaintiffs claim that while in the process of apprehending Arnold, police officers and the chaplin engaged in a physical struggle with him in which they applied O.C. spray, struck him with a flashlight and batons, forced him to the ground, knelt on his back, held him in a face down position, and cuffed his hands and shackled his legs, strapping them together in a "hog-tie" position. At some point the officers called for an ambulance and a patrol wagon to come to the scene. When the patrol wagon arrived, the officers lifted Arnold off of the ground and placed him in the face down position in the back of patrol wagon. The officers transported Arnold to York County Hospital for treatment of a head wound he incurred in the struggle. Plaintiffs claim that the officers noticed Arnold's irregular or "agonal" breathing while transporting him but did not adjust his position or inform the hospital. Based on these actions on the part of the officers, Plaintiffs allege Arnold died from a condition known as "positional asphyxiation."

Plaintiffs' Complaint pleads the following Section 1983 and Pennsylvania state law claims against the City of York and its Police Chief, Michael R. Hill: 1) Defendants failed to train the City's police officers regarding the risks of positional asphyxia, in violation of Decedent's Fourteenth Amendment rights; 2) Defendants violated Decedent's rights under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, by treating Arnold, who was disabled under the Act, in a discriminatory manner; 3) Defendants violated Decedent's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, by treating Arnold in a discriminatory manner; 4) a survival action on behalf of Decedent's estate; and 5) a wrongful death claim against Defendants.

This case was assigned to Magistrate Judge Malachy E. Mannion for preliminary review. On June 28, 2004, Magistrate Judge Mannion issued a report recommending that Defendants' Motion to Dismiss be granted in part and denied in part, to the following extent: as to Count I, the Motion should be denied; as to Counts II and III, the Motion should be granted as to Defendant Police Chief Hill and denied as to Defendant City of York.

Defendants filed objections to the Magistrate Judge's Report and Recommendation on July 12, 2004, and Plaintiffs filed a brief in opposition to Defendants' objections on July 29, 2004. As Defendants filed a reply brief on August 11, 2004, the

issues have been fully briefed and this matter is now ripe for disposition.

## STANDARD OF REVIEW

When objections are filed to a report of a magistrate judge, we make a de novo determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections. *United States vs. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); 28 U.S.C. § 636(b)(1); Local Rule 72.31. Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge. *Id.* Indeed, in providing for a de novo review determination rather than a de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Id. See also Mathews v. Weber,* 423 U.S. 261, 275, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); *Goney v. Clark,* 749 F.2d 5, 7 (3d Cir.1984).

## DISCUSSION

Defendants objections are in essence restatements of the issues and arguments presented in their brief in support of their Motion to Dismiss submitted to Magistrate Judge Mannion. Defendants argue that the Magistrate Judge erred in deciding that the Plaintiffs stated a Fourteenth Amendment substantive due process claim, or alternatively, that he failed to limit the claim appropriately. Defendants also argue that the Magistrate Judge erred in deciding that the Plaintiffs stated claims pursuant to the Rehabilitation Act and the ADA, or alternatively, that he failed to limit the applicability of the Acts appropriately.

At the outset of our analysis we will observe that time and again Defendants object to Plaintiffs' form of pleading, claiming that Plaintiffs have failed to allege facts sufficient to support their claims. We disagree and direct Defendants to Federal Rule of Civil Procedure 8, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 also states that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required." We find that Plaintiffs have properly pled claims pursuant to the Fourteenth Amendment, the Rehabilitation Act, and the ADA. Accordingly, we shall deny Defendants' Motion to Dismiss to the extent recommended by Magistrate Judge Mannion.

## Fourteenth Amendment Substantive Due Process Claim

Plaintiffs claim that the Defendants' failure to train its police officers and/or Defendants' customs, practices or policies resulted in a violation of Decedent's and Plaintiffs' constitutional rights under the Fourteenth Amendment. We find that Plaintiffs have properly pled a Section 1983 claim against Defendants by alleging that they acted with deliberate indifference in failing to provide adequate training for handling encounters with mentally ill and emotionally disturbed persons, and that this failure to train resulted in Decedent's death. *See Canton v. Harris,* 489 U.S. 378, 389–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Defendants argue that because Plaintiffs are not suing the individual officers involved in the incident, this fact somehow establishes that the officers did not violate Decedent's constitutional rights and, in turn, the City and its Police Chief cannot be held liable. We disagree. As Magistrate Judge Mannion correctly noted, the Third Circuit has held that a municipality can be liable under Section 1983 and the Fourteenth Amendment for a failure to train its police officers, even if no individual officer violated the Constitution. (Rep.

& Rec. at 10–11.) The Third Circuit so held because claims against officers at the scene differ from claims against a municipality in that they "require proof of different actions and mental states." *Fagan v. City of Vineland,* 22 F.3d 1283, 1292 (3d Cir.1994). Even if we were to agree with Defendants' argument that *Fagan's* holding is on dubious grounds,[1] based on Plaintiffs' allegations and at this early stage in the litigation, we are unwilling to hold that no constitutional violation occurred.

We further disagree with Defendants' argument that Plaintiffs' Complaint alleges "two distinct events" or that this is material to the viability of Plaintiffs' claims, and therefore decline to define the claim as a "pre" or "post" seizure claim. (Br. Supp. Obj. to Rep. & Rec. at 8–12.) Defendants seek for us to dismiss Plaintiffs' Complaint regarding the actions of the police officers up to and including the point when Decedent was handcuffed because they argue that Plaintiffs' claims are grounded in the subsequent actions of the officers, such as when they "hog-tied" and transported Decedent. Further, they argue that these subsequent actions fail to meet the "shocks the conscience" standard. *See County of Sacramento v. Lewis,* 523 U.S. 833, 846–47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

■ We find that Plaintiffs have pled sufficient facts regarding the apprehension of Decedent, ensuing struggle and handcuffing of him, as well as the type of restraint used and manner of his transport, to support their claims. In addition, we find the forgoing constitutes a continuing series of events that, taken together and if proven, could support Plaintiffs' claims that the actions of the police officers on the scene demonstrate Defendants' failure to provide proper training.

Finally, Defendants argue that Plaintiffs failed to allege facts sufficient to demonstrate "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights." (Br. Supp. Obj. at 9, 12) (*quoting Canton,* 489 U.S. at 389–90, 109 S.Ct. 1197.) They claim, alternatively, that Plaintiffs failed to identify which federal law requires specialized programs for handling confrontations with mentally ill persons, that Plaintiffs failed to allege "why *these* particular defendants should have provided training on *this particular topic,*" i.e., the hog-tying of agitated, mentally ill persons, and further that Plaintiffs failed to allege that "defendants knew that hog tying was commonly used in York or that the defendants knew of a previous death in York related to this type of conduct." (Br. Supp. Obj. at 9, 12) (emphasis in original). Again, we disagree. First, Plaintiffs have alleged claims under the Rehabilitation Act and the ADA, which place special duties on government entities dealing with disabled persons. Second, we find it somewhat disingenuous for Defendants to argue that unless Plaintiffs identify another factually similar death occurred in the jurisdiction of the City of York, they cannot allege that Defendants were deliberately indifferent in their failure to train. The instant case is hardly novel, and in fact this Court has had several similar actions on our docket during the past two years. We are confident that Defendants and their attorneys are familiar with claims such as these, as municipalities and police departments both within and outside of this district are increasingly sued for similar alleged violations. *See e.g., Sherwood v. City of Williamsport,* No. 02–736 (M.D.Pa. July 7, 2004). Accordingly, we find that Plaintiffs have pled sufficient

---

1. We expressly reject Defendants' invitation to limit *Fagan's* holding to cases involving police pursuits.

facts to state a Fourteenth Amendment claim against Defendants.

### Rehabilitation Act and ADA Claims

Magistrate Judge Mannion found that Plaintiffs properly pled claims against the City of York pursuant to the Rehabilitation Act and the ADA. Magistrate Judge Mannion also noted that there is no individual liability under the ADA and the Rehabilitation Act, and thus those claims should be dismissed against Defendant Police Chief Hill.

As before, Defendants here argue that "an arrest is not the type of government service that is covered by the ADA" (Rep. & Rec. at 16), and that the Magistrate Judge's Reliance on our Court's recent decision in *Schorr v. Borough of Lemoyne*, 243 F.Supp.2d 232 (M.D.Pa.2003), is misplaced. We agree with Magistrate Judge Mannion's analysis of Plaintiffs' claims against the City as to Counts II and III and will adopt it as our own. Further, we reject Defendants' contention that *Schorr* is distinguishable from the case before us because in that case the officers were attempting to serve a warrant, giving them "a high level of control over *how and when* to contact the suspect." [2] (Br. Supp. Obj. at 14) (emphasis in original). Based on the facts alleged by Plaintiffs, which again we must accept as true for the purpose of disposing of the Motion, it appears that these cases are factually similar, and we find the lack of a warrant in this case to be immaterial.

In addition and as noted above, we decline to split the events of August 12, 2002 into two distinct, pre- and post-seizure events and accordingly will not limit Plaintiffs' ADA and Rehabilitation Act claims against the City of York. Finally, we adopt

---

**2.** Here again we will decline Defendants' invitation to give greater weight to a decision of the Court of Appeals for the Fifth Circuit, *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000), than to what Defendants conclude is

the Magistrate Judge's findings and dismiss Counts II and III against Defendant Police Chief Hill.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. The Report and Recommendation (doc. 16) filed on June 28, 2004, is adopted in its entirety.

2. Defendants' Motion to Dismiss (doc. 4) is granted in part and denied in part, to the following extent:

   i. the Motion is DENIED as to Counts I, II, and III against Defendant City of York;

   ii. the Motion is DENIED as to Count I and GRANTED as to Counts II and III against Defendant Police Chief Hill.

3. The Clerk of Court shall send a copy of this Order to Magistrate Judge Mannion.

---

the "non-binding decision" of our Court in *Schorr*. In fact, we find the reasoning applied by our colleague Judge Kane in deciding *Schorr* to be entirely correct and applicable to the facts of this case.